Cecil GREER, Petitioner,

v.

DIRECTOR, OFFICE of WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT of LABOR, Respondent.

No. 90–1065.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1991.

Decided July 22, 1991.

Martin Douglas Wegbreit, Client Centered Legal Services of Southwest Virginia, Inc., Castlewood, Va., for petitioner.

Karen Nancy Blank, Office of the Sol., argued (Robert P. Davis, Sol. of Labor, Donald S. Shire, Associate Sol. for Black Lung Benefits, Barbara J. Johnson, Counsel for Appellate Litigation, Office of the Sol., U.S. Dept. of Labor, Washington, D.C., on brief), for respondent.

Before HALL, Circuit Judge, STAKER, District Judge for the Southern District of West Virginia, sitting by designation, and KAUFMAN, Senior District Judge for the District of Maryland, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

Cecil Greer appeals the denial of his claim under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. We reverse and direct an award of benefits.

## I.

Cecil Greer was born in 1919 and worked in coal mines from 1937 to 1974 as a hand loader, brakeman, and truck driver. He filed a black lung claim on January 21, 1981. This claim was evaluated under the permanent Department of Labor regulations at 20 C.F.R. Part 718.

The medical evidence is conflicting. One blood gas study was non-qualifying. A 1974 X-ray was positive, but another in 1981 was negative. On June 23, 1981, Greer took a pulmonary function study. The results (FEV1 = 1.71, MVV = 59) were qualifying. The attending technician noted that Greer was "very cooperative," and made no indication that Greer gave anything less than optimum effort. Barely two months later, on September 1, 1981, another pulmonary function test was performed in the same doctor's office. Again the MVV was qualifying, in fact lower (57). However, the FEV1 was much higher, and did not qualify (2.34). The FEV1 measures one second of forced expiration; the MVV 12 to 15 seconds. The single second on the later test is the cornerstone of the denial of Greer's claim.

Greer also presented the medical report of Dr. Kanwal, who estimated that Greer could walk 1–2 miles slowly over level ground, fast on level ground for ¼ mile, slowly upgrade for only ¼ mile, and fast upgrade for a bare 200 yards. Greer is also limited to lifting 40 pounds occasionally.

On July 10, 1984, an administrative law judge (ALJ) denied Greer's claim. Though he found that Greer had established 15 years of coal mine employment,[1] the ALJ found that the June 23, 1981, pulmonary function study was invalid. He therefore denied the claim based on the later result. On appeal, the Benefits Review Board (BRB) remanded. It held that the ALJ had failed to adequately explain his rejection of the June 23 test; it also directed the ALJ to evaluate the disabilities noted in Dr. Kanwal's medical report in light of Greer's usual coal mine work.

On remand, the ALJ again denied the claim. He did not invalidate the qualifying June 23 test; instead, he ruled that the later test was more reliable because it was

---

1. Under the permanent regulations, for claims filed before January 1, 1982, fifteen years in the mines gives the claimant a rebuttable presumption of causation by coal mine employment if he establishes the existence of a totally disabling respiratory or pulmonary impairment. 20 C.F.R. § 718.305.

later in time. Moreover, he stated that "[t]he fact that in this case, such evidence was nonqualifying creates doubt that the earlier study was truly indicative of Claimant's condition." In support of this conclusion, he erroneously posited that *both* the FEV1 and MVV on the second test, rather than just the FEV1, were "well in excess" of the June 23 results. As we mentioned above, the MVV, which measures pulmonary function over a more sustained (12–15 seconds) period, was actually lower on September 1.

The ALJ gave a terse rejection of Greer's argument that Kanwal's report established disability: "[t]he limitations as described by Dr. Kanwal would not appear to prohibit Claimant from performing his usual coal mine employment as a truck driver, presumptively requiring minimal physical exertion."

Greer again appealed to the BRB, which this time affirmed the denial. It held that the ALJ's error in finding the September 1 MVV nonqualifying was harmless. It did not rely on the "later in time" approach to reject the earlier test. Instead, it stated that "the administrative law judge acted within his discretion in determining that the higher, nonqualifying results produced by the second test more accurately reflected claimant's actual pulmonary condition in light of the effort-dependent nature of pulmonary function studies."

The BRB's affirmance on the other issue —Kanwal's report—was completely conclusory: "the administrative law judge considered the evidence regarding claimant's usual coal mine employment and reasonably concluded that the physical limitations set forth in Dr. Kanwal's report would not render claimant unable to perform his usual coal mine work, and substantial evidence in the record supports this finding."

Greer appeals.

2. *But see* footnote 4 *infra.*

3. "The Act embodies the principle that doubt is to be resolved in favor of the claimant." *Mullins Coal Co. v. DOWCP*, 484 U.S. 135, 156 n. 29, 108 S.Ct. 427, 438 n. 29, 98 L.Ed.2d 450 (1987). As the *Mullins* dissent lamented, however, "[t]he Director has failed to bring to our attention, however, one instance in which the true doubt

## II.

◼ Greer has established fifteen years of coal mine employment, and there is no rebuttal evidence to defeat the presumption that his respiratory impairment results from that employment. Thus, if Greer established total disability under 20 C.F.R. § 718.204(c)(1) (pulmonary function tests) or[2] § 718.204(c)(4) (other medical evidence), he deserves benefits. Our review of the ALJ's application of the law is *de novo*, but factual findings must be affirmed if supported by substantial evidence. *Amigo Smokeless Coal Co. v. Director, OWCP*, 642 F.2d 68 (4th Cir.1981).

Greer asserts that the two pulmonary function tests, one qualifying and one not, are in equipoise; therefore, under the "true doubt" rule,[3] he should be awarded benefits.

◼ The Director does not rely on the "later in time" rationale in order to give the September 1 test more weight. We agree with Greer that two months is insignificant when evaluating a slowly-progressing condition like pneumoconiosis. The tests should be considered contemporaneous.

◼ The Director instead relies on an argument we find overstated, simplistic, and unfair to claimants. It starts from the indisputable proposition that no one can possibly expel more air than he is ultimately capable of. Therefore, it is impossible to make a higher-than-capacity score on the pulmonary function tests. Conversely, a claimant can produce an artificially low result by giving subpar effort. The Director then posits the conclusion: higher test results are more reliable than lower ones.

The fallacy of the Director's argument is that pneumoconiosis is a chronic condition,

rule actually has been applied by an ALJ in evaluating a miner's claim." 484 U.S. at 163 n. 2, 108 S.Ct. at 442 n. 2 (Marshall, J., dissenting). At oral argument, counsel for the Director assured us that the true doubt rule is applied by ALJs, though she did not cite any particular instance.

and, on any given day, it *is* possible to do better, and indeed to exert more effort, than one's typical condition would permit. The Director trumpets the opposite: "[a] ventilatory test is effort-dependent and can reflect temporary rather than chronic respiratory disability." Brief of Director, at 13. True enough, but if one substitutes "ability" for "disability," the logic still holds.

Besides its analytical defects, the Director's argument is not supported by the language or the purposes of the Act. We would think it strange indeed if an Act which "embodies the principle that doubt is to be resolved in favor of the claimant" also implicitly contains a rule that the less a test result supports the claim, the more reliable it is.

There are two contemporaneous test results; both conform to the reliability standards of 20 C.F.R. Part 718, Appendix B. One supports the claim; one does not. We have a true doubt. We give Greer the benefit of that doubt, and reverse.

### III.

 Dr. Kanwal's report also supports Greer's entitlement to benefits.[4]

Though he was specifically directed by the BRB to evaluate Kanwal's report of disability against Greer's usual coal mine work, the ALJ *presumed* that coal truck driving requires only minimal exertion. The BRB affirmed with the conclusory language we quoted above.

Greer argues that he is entitled to factual findings, not presumptions or conclusions based on presumptions. We agree. The undisputed testimony of Greer established that he occasionally had to break coal loose from the truck bed and to shovel coal onto a loading dock. The ALJ concluded that Greer was "somewhat equivocal" about whether shoveling was "actually a requirement" of his job. We are puzzled by this statement. Greer flatly testified that he had to shovel coal occa-

sionally, and we know of no rule that a claimant must show a written job description or formal "requirements" in order to establish the demands of his usual coal mine employment. Moreover, Greer points out that the Department of Labor's own dictionary of occupational titles states that a dump-truck driver (including coal trucks) must expend medium exertion. Greer asserts that if any presumptions are going to be used, the Labor Department's own standard ought to apply. The ALJ's conclusion that Greer's employment required only "minimal" exertion is not supported by substantial evidence. The dependent deduction that Kanwal's report did not establish total disability is similarly without foundation.

We reverse and remand with instructions to award benefits.

**REVERSED AND REMANDED.**

---

**4.** The Tenth Circuit has held that all evidence of disability should be weighed together, and qualifying under one subsection of § 718.204(c) does not necessarily establish total disability. *Bosco v. Twin Pines Coal Co.*, 892 F.2d 1473, 1477– 1479 (10th Cir.1989). Without endorsing *Bosco*, we address the other evidence relating to disability notwithstanding our holding that Greer qualifies under § 718.204(c)(1).