61 F.3d 899
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lola ADKINS, Widow of Allen Adkins, Petitioner,
v.
ARCH OF WEST VIRGINIA, INCORPORATED; Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 94-2510.
 United States Court of Appeals, Fourth Circuit.
 Argued May 4, 1995.
Decided July 24, 1995.
 
 ARGUED: Anthony Joseph Cicconi, SHAFFER & SHAFFER, Charleston, WV, for Petitioner. C. Scott Masel, ROBINSON & MCELWEE, Charleston, WV, for Respondents.
 ON BRIEF: Henry C. Bowen, ROBINSON & MCELWEE, Charleston, WV, for Respondent Arch of West Virginia.
 Ben.Rev.Bd.
 REMANDED.
 Before WIDENER, HALL, and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Lola Adkins, widow of Allen Adkins, petitions for review of the Benefits Review Board's affirmance of the denial of her husband's black lung claim. We remand with instructions to award benefits.
 
 I.
 
 2
 Allen Adkins toiled in the coal mines for 41 years. For the last three years, he was a rock truck driver for Arch of West Virginia, the responsible operator and respondent here. He filed a claim for black lung benefits in September, 1988. Adkins smoked (over a pack a day) for 42 years and had a history of diabetes, hypertension, and heart disease.
 
 
 3
 At the request of the Department of Labor, the claimant was examined by Dr. Mohammed I. Ranavaya on October 21, 1988. Ranavaya, a "B" reader,[1] interpreted an x-ray as positive for simple pneumoconiosis. He concluded that Adkins was totally disabled from performing his usual coal mine employment. Later, however, at his deposition, Dr. Ranavaya testified that Adkins could perform the truck driving job as it was explained to him by the company's attorney.
 
 
 4
 The October 21, 1988, x-ray was reread six times. Dr. Dominic Gaziano (B) read it (at the request of the Department of Labor) as positive, but the five readings submitted by the employer (Drs. George L. Zaldivar B, Paul S. Wheeler B/BCR,[2] William W. Scott B/BCR, C. Ronald Duncan B/BCR, and Ravindra K. Gogineni B/BCR) were all negative.
 
 
 5
 Two x-rays taken almost contemporaneously (July 11 and July 17, 1989) were read a total of twelve times. All six readings of the July 11 x-ray were negative (Drs. J.L. Leef B/BCR, Zaldivar, Scott, Wheeler, Gogineni, and Duncan), and all were submitted by the employer.[3] Two of the six readings of the July 17 x-ray were positive. (Positive: Drs. Lois Speiden B,[4] and W. Alva Deardorff B/BCR; Negative: Drs. Harold B. Spitz B/BCR, Martin Wershba B/BCR, Jerome Wiot B/BCR, and Ralph T. Shipley B/BCR). The two positive x-ray readings were submitted by the claimant; the four negative readings by the employer.
 
 
 6
 In addition, back in 1982, Dr. Leef had read an x-ray as positive, though, as we said above, he read the July 11, 1989, x-ray as negative. The 1982 x-ray was part of an examination of Adkins ordered by the respondent employer.
 
 
 7
 Two out of six pulmonary function tests were qualifying, though none of three blood gases was.
 
 
 8
 Three examining physicians (Drs. Leef,[5] Ranavaya, and Donald L. Rasmussen) diagnosed pneumoconiosis. One examining (Dr. Robert J. Crisalli) and two consulting (Drs. James R. Castle and Gregory J. Fino) physicians attributed all of the miner's respiratory difficulties to smoking and smoking-related emphysema. Dr. Zaldivar also offered a consultative report that the miner did not have pneumoconiosis, but the ALJ struck it from the record.
 
 
 9
 The claimant died on December 2, 1990, following open heart surgery. His widow, Lola Adkins, was substituted as claimant. A hearing was held on his claim the following January 31. The administrative law judge (ALJ) issued a decision denying benefits on May 22, 1991. The ALJ held that the miner had established the existence of pneumoconiosis by a preponderance of the x-ray and physician report evidence, but that he had failed to prove total disability due to that pneumoconiosis.
 
 
 10
 The miner's widow petitioned for review, and the company cross-petitioned for review of the finding of pneumoconiosis. The Benefits Review Board (BRB) remanded for reconsideration. On remand, the ALJ held that the miner had not established the existence of pneumoconiosis, and so he denied benefits. The BRB affirmed, and the miner's widow petitions for review.
 
 II.
 
 11
 We must affirm the denial of benefits if the ALJ and BRB properly applied the law and if the ALJ's factual findings are supported by substantial evidence. Amigo Smokeless Coal Co. v. Director, OWCP, 642 F.2d 68 (4th Cir.1981). There are several fatal defects in the ALJ's reasoning here. The first and most glaring error involves the manner in which the BRB instructed the ALJ to weigh the x-ray evidence on remand.
 
 
 12
 The first time around, the ALJ noted that the four positive interpretations (of two of the three x-rays) had been made by four different readers, that all of the negative interpretations had been submitted by the employer, and that four of the latter were classified as 0/1, which shows some coal retention in the lungs. He noted that the miner had worked over 40 years in the mines, and he stated that he had no way of knowing whether the employer possessed any other x-ray readings. He therefore found that the x-rays established pneumoconiosis "by a bare preponderance of the evidence." The BRB faulted this reasoning. It stated that it did not matter which party submitted a particular reading, because there is nothing suspect about evidence generated in connection with litigation. It criticized the ALJ for finding any significance in the number of different readers who had interpreted x-rays as positive, and it disapproved the use of 0/1 readings and the miner's length of employment to support a finding of pneumoconiosis. It instructed the ALJ: "[a]n administrative law judge should focus on the number of x-ray interpretations, along with the readers' qualifications, dates of film, quality of film and the actual reading."
 
 
 13
 We believe that the BRB erred in overturning the ALJ's finding that the x-ray evidence established that Adkins suffered from pneumoconiosis. Other than his speculation that the respondent employer might have positive readings up its sleeve, the ALJ's analysis was thoughtful and logical. Parties to legal proceedings try to develop evidence to support their positions, and even the most neophyte factfinder perceives at once that self-serving evidence must be examined with a skeptical eye. Thus, it was appropriate for the ALJ to consider that all of the negative x-ray readings were procured by the party opposing entitlement (two positive readings, on the other hand, resulted from Department of Labor referrals). See Woodward v. Director, OWCP, 991 F.2d 314, 321 (6th Cir.1993) (ALJ should consider the "party affiliation" of competing experts). Moreover, though a 0/1 reading is not "positive" for pneumoconiosis, it does show some dust retention in the lungs; consequently, it does not rebut a positive x-ray as strongly as does a completely negative reading. The ALJ did not act irrationally by simply keeping this fact in mind. Adkins' 41 years in the mines is relevant insofar as it suggests a probable source for the dust.
 
 
 14
 On remand, the ALJ took the BRB's instruction to focus on the number of interpretations to heart. He found simply:
 
 
 15
 Of the nineteen x-rays entered into evidence only four are positive for pneumoconiosis. None of these readers are Board Certified, while nearly all the negative readers are Board Certified (all are "B["] readers). Claimant has not demonstrated on a quality or quantity basis that he has pneumoconiosis by x-ray.
 
 
 16
 But there were not nineteen x-rays; there were three. Numerical superiority in x-ray interpretations often illustrates little more than a disparity in the relative financial resources of the parties. See Woodward, 991 F.2d at 321 ("[C]onsideration of merely quantitative differences, without an attendant qualitative evaluation of the x-rays and their readers, is legal error.").
 
 
 17
 Another problem with the ALJ's analysis on remand is that he misstated the qualifications of at least one of the radiologists. Dr. W. Alva Deardorff, who read the July 17, 1989, film as positive, is a board-certified radiologist. According to Dr. Rasmussen's report, Dr. Lois Speiden is as well, and Dr. Speiden read the same film as positive. The BRB glossed over this mistake by making its own finding of fact: "Dr. Deardorff is nonetheless not as well qualified as the board certified B-readers credited by the administrative law judge." This finding of fact, even if making it were proper, is not supported by any analysis or citation to any part of the record.
 
 
 18
 The ALJ's finding that the physicians' reports did not support a finding of pneumoconiosis is also highly suspect. He counted into his analysis a report by Dr. Zaldivar that had been previously stricken from the record, and he erroneously stated that Drs. Fino, Castle, and Zaldivar had "reviewed all the medical evidence of record." None of the three had reviewed qualifying pulmonary function tests dated March 20, 1989, and December 4, 1989.
 
 
 19
 The BRB deemed these errors harmless. Dr. Zaldivar's report was merely "cumulative," and the other physicians' failure to review "all the evidence of record" was harmless because "a pulmonary function study is largely irrelevant to the diagnosis of coal workers' pneumoconiosis."
 
 
 20
 This latter statement is nothing short of startling. Standing alone, a "qualifying" pulmonary function study says nothing about the etiology of the impairment, to be sure, but it most certainly is not "irrelevant" when a physician considers it in context. Indeed, the black lung regulations so recognize:
 
 
 21
 (a) A finding of the existence of pneumoconiosis may be made as follows:
 
 
 22
 * * *
 
 
 23
 (4) ... if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in Sec. 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.
 
 
 24
 20 C.F.R. Sec. 718.202(A)(4) (emphasis added).
 
 III.
 
 25
 Because the evidence that Adkins was disabled by pneumoconiosis is reasonably clear,[6] we are reluctant to remand this claim for yet another round of consideration. If an award of benefits here is to serve any purpose, it must be made promptly. We therefore remand with instructions to award benefits.
 
 REMANDED WITH INSTRUCTIONS
 WILKINS, Circuit Judge, dissenting:
 
 26
 Assuming arguendo that the majority is correct that the denial of benefits should not be affirmed, the majority nevertheless commits fundamental error in directing that benefits be awarded without the necessity of a remand. Accordingly, I dissent.
 
 
 27
 "To receive black lung benefits, a claimant must be totally disabled due to pneumoconiosis." Robinson v. Pickands Mather & Co./Leslie Coal Co., 914 F.2d 35, 37 (4th Cir.1990) (internal quotation marks & emphasis omitted). The ALJ initially denied benefits based on his finding that although Adkins suffered from pneumoconiosis, he was not totally disabled due to the disease. Upon remand from the BRB, the ALJ found it unnecessary to reach the issue of total disability after concluding that Adkins did not suffer from pneumoconiosis. Despite the lack of any finding by the ALJ that Adkins was totally disabled as a result of pneumoconiosis, the majority directs that benefits be awarded, concluding that it "is reasonably clear" that he was.
 
 
 28
 This situation is dissimilar to one in which we have remanded for an award of benefits after determining that the BRB erred in denying a claim and that the ALJ's finding of total disability due to pneumoconiosis was supported by substantial evidence. See Wilson v. Benefits Review Bd., 748 F.2d 198 (4th Cir.1984). Here, the majority has no previous finding of total disability on which to rely, and it simply has no basis on which to make this determination in the first instance. See Doss v. Director, OWCP, 53 F.3d 654, 658-59 (4th Cir.1995). Indeed, it was far from "reasonably clear" that Adkins was totally disabled due to pneumoconiosis--the evidence was conflicting as to the physical requirements of Adkins' usual coal mine work in the position of a rock-truck driver and as to whether Adkins could perform those requirements.
 
 
 29
 This case is remarkable because the majority is content to ignore core procedural requirements in order to reach the result of awarding benefits, thereby avoiding the potential interference of further proceedings. We have no right to usurp the role of the ALJ as we do today.
 
 
 
 [1]
 A "B" reader is a physician who has passed a test given by the Department of Health and Human Services that measures proficiency in assessing and classifying pneumoconiosis from x-rays. Mullins v. Director, OWCP, 484 U.S. 135, 145 n. 16 (1987)
 
 
 [2]
 "BCR" stands for board-certified radiologist
 
 
 [3]
 With the exception of Dr. Leef, these readers are identical to those who read the 10/21/88 x-ray as negative
 
 
 [4]
 Dr. Speiden's qualifications are not in the record. The claimant asserts that he is a board-certified radiologist, but the only evidence of this is a notation in Dr. Rasmussen's report
 
 
 [5]
 Dr. Daniel MacCallum also participated in this examination, but he and Dr. Leef gave a single joint report
 
 
 [6]
 In its review of the first decision of the ALJ, the BRB correctly held that the ALJ had mistakenly found a March, 1989, ventilatory study to be non-qualifying and had failed to give a December, 1989, qualifying study sufficient weight under our holding in Greer v. Director, OWCP, 940 F.2d 88 (4th Cir.1991)