[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15320
Non-Argument Calendar
_____

Agency No. 15-0168 BLA


JIM WALTER RESOURCES, INC.,
WALTER ENERGY, INC.,

                                                            Petitioners,

versus

NOLAN BRANTLEY,
DIRECTOR, OWCP,
U.S. DEPARTMENT OF LABOR,

                                                            Respondents.


_____

Petition for Review of a Decision of the
Benefits Review Board
_____

(July 11, 2017)

Before JULIE CARNES, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Jim Walter Resources, Inc. seeks review of the Benefits Review Board's ("BRB") denial of reconsideration and of its final order affirming an Administrative Law Judge's ("ALJ") grant of benefits under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 901, *et seq.* Jim Walter Resources contends that the medical evidence does not establish that Nolan Brantley, who worked in coal mines for over 18 years, has a totally disabling respiratory or pulmonary impairment. Jim Walter Resources argues that the ALJ erred in making weight and credibility determinations about Brantley's pulmonary function tests ("PFT") and about medical doctors' opinions.

"Decisions of the ALJ are reviewable only as to whether they are in accordance with law and supported by substantial evidence in light of the entire record." *Pittsburg & Midway Coal Mining Co. v. Dir., Office of Workers' Comp. Programs*, 508 F.3d 975, 980 (11th Cir. 2007) (quotation omitted). "Substantial evidence" means "more than a scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). Because the deferential review given to ALJ decisions binds us and the BRB, we review *de novo* BRB decisions. *Id.* When the BRB affirms the ALJ, we review the BRB's decision with the same deference that is given to the ALJ. *Id.* Although a BLBA case comes to us from the BRB, we begin our analysis by reviewing the ALJ's decision. *Id.*

2

"The ALJ is responsible for making credibility determinations and for weighing conflicting evidence; however, the ALJ's opinion must show that the determinations are made in a reasoned manner." *Bradberry v. Dir., Office of Workers' Comp. Programs*, 117 F.3d 1361, 1367 (11th Cir. 1997).  We cannot second guess the ALJ's credibility determinations unless they are unsupported by substantial evidence.  *U.S. Steel Mining Co. v. Dir., OWCP*, 386 F.3d 977, 992 (11th Cir. 2004).  "That a different conclusion might be reached from the same evidence is insufficient reason to overturn the result" in a BLBA case.  *Black Diamond Coal Mining Co. v. Benefits Review Bd.*, 758 F.2d 1532, 1534 (11th Cir. 1985).

"[C]ourts require administrative issue exhaustion as a general rule because it is usually appropriate under an agency's practice for contestants in an adversary proceeding before it to develop fully all issues there."  *Sims v. Apfel*, 530 U.S. 103, 109 (2000) (alteration and quotations omitted).  A party that petitions the BRB for review must list the specific issues to be reviewed.  20 C.F.R. § 802.211(a); *see also Sims*, 530 U.S. at 108 (citing this regulation as an example of a requirement of issue exhaustion).  A party abandons an argument on appeal by failing to brief it.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

The BLBA provides benefits "to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to

3

such disease." 30 U.S.C. § 901(a). A miner who applies for BLBA benefits is entitled to benefits if he establishes that he has pneumoconiosis, the pneumoconiosis arose out of coal mine employment, he is totally disabled, and the pneumoconiosis contributes to the total disability. 20 C.F.R. § 725.202(d).

A miner is totally disabled when he has a respiratory or pulmonary impairment that prevents him from performing his usual coal mine work and from engaging in gainful employment "requiring the skills or abilities comparable to those of any employment in a mine or mines in which he . . . previously engaged with some regularity over a substantial period of time." 20 C.F.R. § 718.204(b)(1). There is a rebuttable presumption that a miner is totally disabled due to pneumoconiosis when the miner engaged in coal mine employment for at least 15 years and has a totally disabling respiratory or pulmonary impairment. 20 C.F.R. § 718.305(b)(1), (c)(1). A party opposing a miner's claim for BLBA benefits may rebut this presumption by establishing either that the miner does not have legal or clinical pneumoconiosis, or that pneumoconiosis did not cause any part of the miner's respiratory or pulmonary total disability. *Id.* at § 718.305(d)(1).

A miner's total disability may be established by, among other things, PFTs or a doctor's conclusion—based on reasoned medical judgment and medically acceptable clinical and laboratory diagnostic techniques—that the miner's respiratory or pulmonary impairment prevents him from engaging in employment.

20 C.F.R. § 718.204(b)(2).  Doctors "need not phrase their medical conclusions in terms of 'total disability' in order to establish a presumption sufficient to set out the physical impairments that rule out work." *Black Diamond Coal Mining*, 758 F.2d at 1534 (stating that an ALJ could infer that a miner was totally disabled when a doctor's report indicated that the miner could not "walk more than one block or climb one flight of stairs daily").

Appendix B to title 20, part 718 of the Code of Federal Regulations provides standards "to insure that uniform procedures are used in administering and interpreting [PFTs] and that the best available medical evidence will be submitted in support of a claim for black lung benefits."  20 C.F.R. pt. 718, app. B.  "If it is established that one or more standards have not been met, the claims adjudicator may consider such fact in determining the evidentiary weight to be given to the results of the" PFT.  *Id.*  A PFT involves a procedure to measure values for forced expiratory volume in one second ("$FEV_1$") and forced vital capacity ("FVC") and another procedure to measure maximum voluntary ventilation ("MVV").  *See id.* pt. 718, app. B(2)(ii), (iii); 20 C.F.R. § 718.103(a).

The $FEV_1$ and FVC portion of a PFT involves a person completely expiring his breath, momentarily holding his breath, closing his mouth around a mouthpiece, making "a maximum inspiration" of air, and then blowing "as hard, fast and completely as possible for at least 7 seconds or until a plateau has been

5

attained in the volume-time curve with no detectable change in the expired volume during the last 2 seconds of maximal expiratory effort." 20 C.F.R. pt. 718, app. B(2)(ii). The person must provide a "minimum of three flow-volume loops and derived spirometric tracings." *Id.* The person "shall be observed throughout the [procedure] for compliance with instructions," and "[i]nspiration and expiration shall be checked visually for reproducibility." *Id.* The person's "effort shall be judged unacceptable," among other times, when he has coughed or has "an excessive variability between the three acceptable curves." *Id.* pt. 718, app. B(2)(ii)(D), (G). Excessive variability means that the "variation between the two largest $FEV_1$'s of the three acceptable tracings [exceeds] 5 percent of the largest $FEV_1$ or 100 ml, whichever is greater." *Id.* pt. 718, app. B(2)(ii)(G) (stating that "individuals with obstructive disease or rapid decline in lung function will be less likely to achieve this degree of reproducibility" and that "tests not meeting this criterion may still be submitted for consideration in support of a claim for black lung benefits").

The MVV portion of a PFT involves a person breathing normally into a mouthpiece for 10 to 15 seconds and then breathing "as deeply and as rapidly as possible" into the mouthpiece for 15 seconds. *Id.* pt. 718, app. B(2)(iii). This procedure is repeated three times. *Id.* The person "shall be observed for compliance with instructions" during the procedure. *Id.* The person's "effort shall

be judged unacceptable," among other times, when he has coughed or has "an excessive variability between the three acceptable curves." *Id.* pt. 718, app. B(2)(iii)(B), (D).  Excessive variability means that the "variation between the two largest MVVs of the three satisfactory tracings [exceeds] 10 percent." *Id.* pt. 718, app. B(2)(iii)(D).

Whether a PFT establishes that a miner is totally disabled depends on the PFT results and the miner's age, gender, and height.  20 C.F.R. § 718.204(b)(2)(i) (referencing the tables in 20 C.F.R. pt. 718, app. B).  The Fourth Circuit has rejected the proposition that, where a miner has taken multiple PFTs, the highest PFT results necessarily are more reliable.  *See Greer v. Dir., Office of Workers' Comp. Programs*, 940 F.2d 88, 90-91 (4th Cir. 1991), *abrogated in part on other grounds by Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 281 (1994), *as recognized in Scott v. Mason Coal Co.*, 60 F.3d 1138, 1140 n.2 (4th Cir. 1995).  In *Greer*, the Fourth Circuit accepted that "no one can possibly expel more air than he is ultimately capable of," that it was "impossible to make a higher-than-capacity score on" a PFT, and that a miner could "produce an artificially low result by giving subpar effort." *Id.* at 90.  But the Fourth Circuit stated that an argument that "higher test results [therefore] are more reliable than lower ones" was "overstated, simplistic, and unfair" because "pneumoconiosis is a chronic condition, and, on any given day, it is possible to do better, and indeed to

7

exert more effort, than one's typical condition would permit." *Id.* at 90-91 (emphasis omitted); *see also Thorn v. Itmann Coal Co.*, 3 F.3d 713, 719 (4th Cir. 1993) (stating that the Court had "criticized the practice of routinely ascribing greatest weight to the highest results among valid" PFTs and that "[i]mputing selective reliability to the highest results of invalid" PFTs was "highly speculative" (emphasis omitted)).

As an initial matter, Jim Walter Resources adequately exhausted its argument that a PFT that Brantley took on April 26, 2012, was invalid because he coughed during the PFT. Jim Walter Resources argued to the BRB that Brantley's coughing supported invalidation of the April 26 PFT. Thus, that argument properly is before us. *See Sims*, 530 U.S. at 109.

Brantley took PFTs on April 26, 2012, June 25, 2012, and June 28, 2012. The ALJ's weight and credibility determinations concerning the three PFTs were made in a reasoned manner and are supported by substantial evidence.

The ALJ permissibly gave the April 26 PFT the most weight. The $FEV_1$ and MVV values from the April 26 PFT are not excessively variable, and Dr. Krishna Rao, the doctor who oversaw the PFT, was certified in pulmonary diseases, stated that Brantley gave good effort during the PFT, and determined that the PFT results were acceptable and reproducible. The ALJ was permitted to consider Brantley's coughing during the April 26 PFT in determining the weight to give the PFT

8

results.  *See* 20 C.F.R. pt. 718, app. B; *id.* pt. 718, app. B(2)(ii)(D), (iii)(B).  But the ALJ nonetheless could credit Dr. Rao's determination that the PFT results were acceptable and reproducible.

The ALJ permissibly gave little weight to the June 25 and June 28 PFTs because the results of those PFTs have excessively variable $FEV_1$ values.  *See* 20 C.F.R. pt. 718, app. B; *id.* pt. 718, app. B(2)(ii)(G).  In addition, Brantley was unable to complete the June 25 PFT because of coughing and shortness of breath. Although the results of the two June PFTs are higher than the April 26 PFT results, it is possible that Brantley produced better results and exerted more effort during the June PFTs than his "typical condition would permit."  *See Greer*, 940 F.2d at 90-91; *see also Thorn*, 3 F.3d at 719.  Thus, the ALJ could credit the April 26 PFT over the June PFTs.

The ALJ concluded that the PFTs support a finding that Brantley has a totally disabling respiratory or pulmonary impairment.  This conclusion is in accordance with the law and is supported by substantial evidence in light of the entire record.  The April 26 and June 28 PFT results indicate that Brantley is totally disabled, and the ALJ characterized the June 25 PFT results as "border-line non-qualifying" for total disability.  The PFT evidence supports the ALJ's conclusion that Brantley has a totally disabling respiratory or pulmonary impairment.

The ALJ's weight and credibility determinations concerning the doctors' opinions were made in a reasoned manner and are supported by substantial evidence. The ALJ permissibly gave Dr. Allan Goldstein's opinion significant weight, because Dr. Goldstein examined Brantley, oversaw the June 25 PFT, and reviewed Brantley's work history, symptoms, abilities, and medical records. The ALJ permissibly gave Dr. Rao's opinion some weight, because Dr. Rao examined Brantley, oversaw the April 26 and June 28 PFTs, and reviewed Brantley's symptoms and abilities. The ALJ permissibly gave Dr. Gregory Fino's opinion little weight, because Dr. Fino reviewed some of Brantley's medical records but did not examine or test Brantley.

The ALJ concluded that the doctors' opinions support a finding that Brantley has a totally disabling respiratory or pulmonary impairment. This conclusion is in accordance with the law and is supported by substantial evidence in light of the entire record. Dr. Goldstein determined that Brantley has a pulmonary impairment caused by asthma and stated that Brantley "can walk about a block and a half and then becomes short of breath." *Cf. Black Diamond Coal Mining*, 758 F.2d at 1534 (stating that an ALJ could infer that a miner was totally disabled when a doctor's report indicated that the miner could not "walk more than one block or climb one flight of stairs daily"). Dr. Rao determined that Brantley has severe chronic obstructive pulmonary disease and uncontrolled asthma. Dr. Rao further

10

determined that Brantley's impairment prevents him from working in coal mines or engaging in gainful employment because "his respiratory condition is so severe that it is difficult for him to walk several feet without stopping to catch his breath." Although Dr. Fino found no "valid, objective evidence of an impairment or disability," the ALJ could give this opinion little weight.  The doctors' opinions support the ALJ's conclusion that Brantley has a totally disabling respiratory or pulmonary impairment.

The ALJ's conclusion that the medical evidence establishes that Brantley has a totally disabling respiratory or pulmonary impairment is in accordance with the law and is supported by substantial evidence—the PFTs and the doctors' opinions—in light of the entire record.  Jim Walter Resources does not challenge the ALJ's conclusion that, if Brantley has a totally disabling respiratory or pulmonary impairment, Jim Walter Resources did not rebut the presumption that the disability is due to pneumoconiosis.  *See* 20 C.F.R. § 718.305(b)(1), (c)(1), (d)(1).  Jim Walters Resources also does not challenge the ALJ's conclusion that Brantley meets the other eligibility requirements for receipt of BLBA benefits.  *See* 20 C.F.R. § 725.202(d).  Jim Walters Resources has abandoned challenges to these undisputed conclusions.  *See Access Now*, 385 F.3d at 1330.  Accordingly, the ALJ's and the BRB's decisions that Brantley is eligible to receive BLBA benefits

are in accordance with the law and are supported by substantial evidence in light of the entire record.  We therefore deny the petition for review.

**PETITION DENIED.**