**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DOMINION COAL CORPORATION,
<u>Petitioner,</u>

v.

EZEKIAL H. VANCE; DIRECTOR, OFFICE

No. 96-1160

OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
<u>Respondents.</u>

On Petition for Review of an Order
of the Benefits Review Board.
(No. 95-897-BLA)

Argued: January 27, 1997

Decided: March 20, 1997

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion. Judge Niemeyer wrote
a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Ronald Eugene Gilbertson, KILCULLEN, WILSON &
KILCULLEN, Washington, D.C., for Petitioner. Frederick Klein
Muth, HENSLEY, MUTH, GARTON & HAYES, Bluefield, West
Virginia, for Respondent Vance; Richard Anthony Seid, UNITED
STATES DEPARTMENT OF LABOR, Washington, D.C., for

Respondent Director. **ON BRIEF:** J. Davitt McAteer, Acting Solicitor of Labor, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, Helen H. Cox, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dominion Coal appeals from the Black Lung Benefits Review Board's order upholding an Administrative Law Judge's award of benefits to Ezekial Vance. The ALJ's finding of pneumoconiosis under 20 C.F.R. § 718.202(a)(4) (1996) and the ALJ's decision that Vance's disability was "due to" coal worker's pneumoconiosis were legally correct and supported by substantial evidence. Accordingly, we affirm.

I.

Ezekial H. Vance worked for thirty-three years as a coal miner, and smoked a half-a-pack of cigarettes a day for over thirty years. Vance quit smoking in 1990. Vance worked for Dominion Coal Corporation ("Dominion") for eighteen years, and retired in October 1989. On May 6, 1993 he filed an application for federal black lung benefits under 30 U.S.C. §§ 901-945 (1994). The Department of Labor determined that Vance was eligible for benefits, and that Dominion was the responsible operator. Dominion filed a controversion to this finding, and Vance's case was forwarded to an ALJ.

On July 8, 1994 Vance and Dominion appeared before the ALJ, who considered the various and conflicting medical testimony and held that Vance was entitled to benefits. Dominion appealed this rul-

2

ing to the Benefits Review Board. The Board affirmed the decision of the ALJ and Dominion appealed to this court.

II.

The standard of our review of the Board's decision is set forth in the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 921 (1994), and incorporated into the Black Lung Act by 30 U.S.C. § 932(a) (1994). See Grizzle v. Pickands Mather & Co., 994 F.2d 1093, 1096 (4th Cir. 1993). The Board reviews the ALJ's findings of fact to determine if they are "supported by substantial evidence in the record considered as a whole." Doss v. Director, Office of Workers Compensation Programs, 53 F.3d 654, 658 (4th Cir. 1995). We review the Board for "errors of law," and to determine whether the Board correctly followed its "statutory standard of review of factual determinations," i.e. whether the Board was correct that the ALJ's findings of fact were supported by "substantial evidence." Doss, 53 F.3d at 658-59.

Substantial evidence is "more than a mere scintilla" and evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Under the substantial evidence requirement "[t]he ALJ has sole power to make credibility determinations and resolve inconsistencies in the evidence." Grizzle, 994 F.2d at 1096.

With these standards in mind we turn to the Board's affirmance of the ALJ in this case. Dominion appeals two aspects of the Board's decision. The first is the Board's affirmance of the ALJ's finding of "legal" pneumoconiosis under 20 C.F.R. § 718.202(a)(4) (1996). The second is the Board's affirmance of the ALJ's decision that Vance's total disability was "due to" his pneumoconiosis under 20 C.F.R. § 718.204 (1996). We discuss these issues in order.

A.

Under 20 C.F.R. § 718.202(a) (1996) there are four ways to establish the existence of pneumoconiosis. The ALJ found pneumoconiosis under both § 718.202(a)(1) and § 718.202(a)(4). Section

3

718.202(a)(1) allows a finding of pneumoconiosis on the basis of a positive x-ray. Section 718.202(a)(4) allows a finding of pneumoconi-osis when "a physician, exercising sound medical judgment, notwith-standing a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201." 20 C.F.R. § 718.202(a)(4) (1996). Section 718.201 defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respira-tory and pulmonary impairments, arising out of coal mine employ-ment." 20 C.F.R. § 718.201 (1996). The Board affirmed the ALJ solely on the basis of his § 718.202(a)(4) finding, and so only that basis is before us. See Grigg v. Director, Office of Workers Compen-sation Programs, 28 F.3d 416, 418 (4th Cir. 1994); Securities and Exch. Comm'n v. Chenery Corp., 318 U.S. 80 (1943).**1**

1.

Dominion first argues that the Board committed legal error because it affirmed the ALJ's finding of pneumoconiosis under § 718.202(a)(4) without considering whether the ALJ's x-ray findings under § 718.202(a)(1) were correct. Dominion asserts that because § 718.202(a)(4) applies "notwithstanding" a negative x-ray, it presup-poses and requires a finding of negative x-ray evidence under § 718.202(a)(1). Vance and the Director maintain that § 718.202(a)(4) is a separate ground for a finding of legal pneumoconiosis, and as long as both the Board and the ALJ stated sufficient facts to support a finding under § 718.202(a)(4) separate x-ray findings under § 718.202(a)(1) are not necessary.

We agree with Vance and the Director's reading of the regulations. The four methods of finding pneumoconiosis are not to be read and applied in seriatim. Instead, each can stand on its own. The "notwith-standing" language clarifies that under § 718.202(a)(4) a doctor may find pneumoconiosis regardless of a negative x-ray; it requires no spe-cific x-ray findings. In fact its plain language suggests the exact oppo-

---

**1** The dissent suggests that we have focused upon the Board's holding under § 718.202(a)(4) "perhaps" because we "recogniz[e] the flaws in the ALJ's evaluation of the x-ray evidence." Under Chenery, we may only review those aspects of the ALJ's decision relied upon by the

Board. 318
U.S. at 87-88.

4

site conclusion, that § 718.202(a)(4) applies"notwithstanding" any x-
ray findings.**2**

2.

Dominion also argues that there is insufficient evidence to support
the ALJ's § 718.202(a)(4) finding. Section 718.202(a)(4) allows a
finding of legal pneumoconiosis "notwithstanding a negative X-ray"
if a Doctor's finding is "supported by a reasoned medical opinion"
and is "based on objective medical evidence such as blood-gas
studies, electrocardiograms, pulmonary function studies, physical per-
formance tests, physical examination, and medical and work histo-
ries." 20 C.F.R. § 718.202(a)(4) (1996).

In making his finding under § 718.202(a)(4) the ALJ first summa-
rized the findings of Drs. Evans, Forehand, Sargent, Wiot, Renn, Fino
and Rasmussen. The ALJ chose to rely particularly on the reports of
the three doctors who actually examined Vance: Drs. Forehand, Ras-
mussen and Sargent. We have repeatedly stated that"the opinions of
treating and examining physicians deserve especial consideration"
and that "great reliance on the conclusions of a claimant's examining
physician" may be appropriate. Grizzle v. Pickands Mather & Co.,
994 F.2d 1093, 1097 (4th Cir. 1993) (quoting Hubbard v. Califano,
582 F.2d 319, 323 (4th Cir. 1978), and King v. Califano, 615 F.2d
1018, 1020 (4th Cir. 1980)). Furthermore, "[w]e defer to the ALJ's
evaluation of the proper weight to accord conflicting medical opin-
ions." Stiltner v. Island Creek Coal Co., 86 F.3d 337, 342 (4th Cir.
1996); see also Grizzle, 994 F.2d at 1096.

Therefore we focus our review of the evidence, as the ALJ did,
upon the three examining physicians. Dr. J. Randolph Forehand

_____

**2** Dominion also argues that because both the Administrative Procedure
Act and the Black Lung Benefits Act require an ALJ and the Board to
consider all relevant evidence, an ALJ must consider x-rays under
§ 718.202(a)(4). But, all that must be considered is relevant evidence,
and if a doctor does not rely upon an x-ray to reach her §
718.202(a)(4)
conclusion, there is no need to separately consider x-rays. What is neces-
sary is to consider the basis on which the doctor herself relied for suffi-
ciency.

5

examined Vance on June 10, 1993 at the request of the Department of Labor. Dr. Forehand was authorized by the Department of Labor to perform a general medical history, a full physical evaluation, a pulmonary function test, an arterial blood-gas study, an electrocardiogram, and a chest x-ray. Based upon these various tests Dr. Forehand concluded that Vance suffered from coal worker's pneumoconiosis, that Vance was totally disabled, and that working in the coal mine was a "contributing factor" in Vance's disability. In describing the basis of this finding at deposition Dr. Forehand stated:

> I thought [Vance's] findings, with a history of thirty-two years of underground coal mining, a lot of that at the face of a dusty area, abnormalities of his pulmonary function study, abnormalities of the arterial blood gas, plus a fairly impressive exercise intolerance based on his study, I thought that his findings were consistent with coal worker's pneumoconiosis.

Dr. Forehand's diagnosis was also based upon an x-ray that both he and a Dr. Shahan read as showing pneumoconiosis. However, contrary to the suggestion of the dissent, Dr. Forehand specifically stated at deposition that he did <u>not</u> depend on the x-ray in making his diagnosis and that even if the x-ray readings had been negative he would have reached the same conclusion. [3]

---

[3] Consider the following exchange during Dr. Forehand's deposition:

> Q: If you had seen what you felt was a negative film on this individual, how might that have changed your opinion, if at all?
>
> A: In this particular individual I was taking into consideration his years under ground and the location in the mine at the face. This is an extremely important component to the overall evaluation. And the variation in the reading probably would not have altered my conclusions.
>
> Q: Therefore, if you had assumed a negative finding on x-ray, your opinion would still be the same, i.e., that there was some contribution to this man's impairment caused by the mine dust exposure?

A: Yes.

6

Dr. Forehand reached the conclusion that Vance suffered from coal worker's pneumoconiosis based upon a blood-gas study, an electrocardiogram, a pulmonary function study, a physical performance test, a physical examination, and medical and work histories. These are the precise tests specifically listed as the "objective medical evidence" required to establish a "reasoned medical" diagnosis of pneumoconiosis under § 718.202(a)(4). Furthermore, Dr. Forehand specifically stated that his diagnosis would be the same regardless of the x-ray evidence. As such, Dr. Forehand's diagnosis is certainly sufficient under § 718.202(a)(4).

Dr. Donald Rasmussen examined Vance on April 6, 1994. Dr. Rasmussen performed a medical history and a physical evaluation, as well as a chest x-ray, an electrocardiogram, a spirometry exam, diffusing capacity studies, and blood-gas studies at rest and during exercise. Dr. Rasmussen found that Vance suffered from pneumoconiosis as a result of his thirty years of coal mine employment, and that Vance was totally disabled. In his deposition Dr. Rasmussen listed a number of factors that contributed to his diagnosis:

> [Vance's] history indicated significant respiratory symptoms. He had abnormal physical findings consistent with chronic lung disease. He had an abnormal x-ray consistent with simple pneumoconiosis. He showed moderate partially reversible obstructive ventilatory impairment, a minimal decrease in his diffusing capacity, and poor exercise tolerance, limited principally by ventilatory impairment, also showing some minimal impairment in gas exchange.
>
> [In the physical examination] there was moderate to marked reduction in the quality of breath sounds or the transmission of breath sounds and there was also prolongation of the expiratory phase with forced respirations.

Dr. Rasmussen also found "moderate airway obstruction" in the ventilator studies, "abnormal" gas exchange at rest, an "inability to perform significant physical work," and "impairment" after exercise. Dr. Rasmussen did note that Vance's impairment was <u>partially</u> reversible, but not so completely reversible as to discount a finding of pneumoconiosis. Dr. Rasmussen recognized at deposition that

7

pneumoconiosis is an "irreversible condition," and reiterated a diagnosis of pneumoconiosis. Furthermore, contrary to the dissent's suggestion that Dr. Rasmussen's opinion should be discounted because of his reliance upon a positive x-ray, Dr. Rasmussen specifically stated at deposition that although he read Vance's x-rays as positive, a negative x-ray would not have changed his diagnosis.

Dr. Rasmussen, like Dr. Forehand, performed all of the tests listed in § 718.202(a)(4) and reached a diagnosis of pneumoconiosis that would have been the same regardless of the x-ray evidence. As such, Dr. Rasmussen also well supported a finding of pneumoconiosis under § 718.202(a)(4).

Dr. Dale Sargent examined Vance on October 29, 1993. Dr. Sargent performed a medical and work history, as well as an electrocardiogram, a pulmonary function test at rest,**4** and a chest x-ray. Dr. Sargent reached the conclusion that Vance suffered from a "moderate ventilatory impairment." Dr. Sargent's October, 1993 report stated that although "[i]t is my overall impression that Mr. Vance may be suffering from coal worker's pneumoconiosis" and that that he "could not entirely exclude coal worker's pneumoconiosis," the x-ray and physical exam findings were more consistent with "cigarette smoking and not coal dust exposure." At his July, 1994 deposition Dr. Sargent reiterated that he thought the x-rays excluded any finding of pneumoconiosis "with the qualifying statement that[he] couldn't completely exclude low profusion simple pneumoconiosis on the basis of the chest X-ray finding." Taken together, these three statements well support the ALJ's statement that Dr. Sargent could not "rule out" pneumoconiosis.

Dominion argues that the evidence listed above is insufficient to establish pneumoconiosis under § 718.202(a)(4) and that in affirming the ALJ under § 718.202(a)(4) the Board has attempted an "end run" around the ALJ's x-ray findings under § 718.202(a)(1). Dominion is correct that an ALJ may not find -- and therefore the Board may not affirm a finding of -- pneumoconiosis under § 718.202(a)(4) relying upon a doctor whose opinion was wholly or largely based upon an

_____

**4** Dr. Sargent did not perform a pulmonary function test during exercise.

8

erroneous x-ray reading. Obviously, a diagnosis based largely upon a positive x-ray finding would not be a finding of pneumoconiosis "notwithstanding" the x-ray evidence. But, an ALJ may find legal pneumoconiosis under § 718.202(a)(4) based upon a doctor's "reasoned medical" diagnosis of pneumoconiosis supported by other "objective medical evidence," such as the tests listed in 20 C.F.R. § 718.202(a)(4) (1996).

In this case both Dr. Rasmussen and Dr. Forehand supported their "reasoned medical opinion" with "objective medical evidence" aside from the x-ray evidence. The ALJ explicitly relied upon these two doctors, and fairly stated that although Dr. Sargent attributed Vance's lung impairment to smoking he could not rule pneumoconiosis out either in his medical report or at deposition.[5] As such, there was substantial evidence to support the ALJ's decision, and the Board correctly affirmed the ALJ's § 718.202(a)(4) finding.

B.

Dominion, joined in part by the Director, next challenges the Board's affirmance of the ALJ's finding that Vance was "totally dis-

---

[5] Although Dominion raises no other objection to the ALJ's factual findings under § 718.202(a)(4) the Director sua sponte argues that the ALJ mischaracterized the medical testimony of Dr. Sargent. As stated above Dr. Sargent made two separate findings: 1) that "Mr. Vance may be suffering from coal worker's pneumoconiosis," but this finding was limited to "low profusion simple pneumoconiosis," which Dr. Sargent thought was not responsible for Vance's impairment; 2) Vance was impaired, but as a result of cigarette smoking. From this the Director argues that the ALJ misunderstood Sargent as positively stating that Vance suffered from pneumoconiosis.

The ALJ did not state that Dr. Sargent found pneumoconiosis. The ALJ stated that "[a]ll the doctors that actually examined the claimant [Drs. Forehand, Rasmussen and Sargent] found that he suffered from coal workers' pneumoconiosis, or at least, could not rule it out." (Emphasis added). As the above description of Dr. Sargent's testimony makes clear the ALJ was correct that Sargent "could not rule out coal workers' pneumoconiosis." Therefore, it is the Director who misconstrues the ALJ's opinion.

abled due to pneumoconiosis." 20 C.F.R.§ 718.204(a) (1996) (emphasis added). All of the doctors agreed that Vance is totally disabled, so the only remaining question is causation. The § 718.204(a) causation standard requires a claimant to show "that his pneumoconiosis was at least a contributing cause of his totally disabling respiratory impairment." Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1195-96 (4th Cir. 1995) (quoting Robinson v. Pickands Mather & Co., 914 F.2d 35, 38 (4th Cir. 1990)). Accordingly we ask whether "the claimant's coal mining [was] a necessary condition of his disability. If the claimant would have been disabled to the same degree and by the same time in his life if he had never been a miner, then benefits should not be awarded." Dehue, 65 F.3d at 1196 (emphasis in original).

1.

Dominion argues first that there was insufficient evidence to support the ALJ's finding of causation. Dominion asserts that both Dr. Forehand and Dr. Rasmussen were equivocal in their discussions of causation. Both Dr. Rasmussen and Dr. Forehand did state that smoking played a part in Vance's disability and that it was difficult to discern exactly the effect of smoking vis a vis coal dust. However, both doctors were unequivocal in their findings that coal dust "contributed" to Vance's disability. Dr. Rasmussen specifically stated that "coal mine dust exposure is at least a major contributing factor to [Vance's] totally disabling respiratory insufficiency." Dr. Rasmussen also stated that Vance's smoking history alone was most likely insufficient to produce his level of impairment. Dr. Forehand also stated that coal worker's pneumoconiosis was "contributing to[Vance's] impairment." Thus, both Dr. Rasmussen and Dr. Forehand offered sufficient evidence of causation for the Board to uphold the ALJ's decision.

2.

Dominion, joined by the Director, next argues that the Board erred in upholding the ALJ's decision because the ALJ did not properly state how it resolved the conflicting evidence on causation. In particular Dominion argues that the ALJ did not sufficiently rebut the opinions of Drs. Fino, Sargent and Renn, who stated that Vance's disability was not "due to" pneumoconiosis. Dominion is correct

that

10

"[a] bald conclusion, unsupported by reasoning or evidence, is gener-
ally of no use to a reviewing court." <u>Maxey v. Califano</u>, 598 F.2d 874,
876 (4th Cir. 1979). The Board held that the ALJ"implicitly credited
Dr. Forehand's testimony."

However, a fair reading of the ALJ's opinion indicates that the ALJ did more than implicitly credit Dr. Forehand, and that the ALJ stated
more than a bald conclusion. The ALJ summarized the opinions on causation of Drs. Fino, Sargent, Renn, Forehand and Rasmussen. As noted earlier, the ALJ chose to rely more heavily on the reports of the
doctors who had personally seen Vance: Drs. Rasmussen, Forehand and Sargent. For this reason, it was reasonable for the ALJ not to spe-
cifically rebut the findings of Drs. Renn and Fino.

Therefore, the only remaining question is whether the ALJ properly considered and rejected Dr. Sargent's finding of no causation, and whether the ALJ explicitly credited the findings of Drs. Rasmussen and Forehand. The ALJ rebutted the findings of Dr. Sargent in its conclusion to the causation section. First, the ALJ reiterated that Dr.
Sargent "could not rule out coal workers' pneumoconiosis." Second, the ALJ concluded the causation section with a lengthy quote of Dr. Forehand that directly contradicts Dr. Sargent's description of pneu-
moconiosis: "the preponderance of the medical literature [ ] suggests
it is a spectrum disease and no one pattern. Pneumoconiosis is not limited to one ventilatory pattern. And I think most of the literature
suggest[s] that it is a mixed or obstructive and not a pure restrictive
pattern." This quote is not included as window dressing. It is the only
lengthy quote in the causation section, and presents clear evidence that the ALJ agreed with Drs. Forehand and Rasmussen's assessment of causation -- that Vance's symptoms are consistent with legal pneumoconiosis, and have disabled him -- and disagreed with Dr. Sargent's conclusion to the contrary.

In short, the ALJ's causation finding was more than a "bare conclu-
sion;" the ALJ specifically considered and rejected Dr. Sargent's views, credited Drs. Rasmussen and Forehand, and provided both the Board and this court a sufficient basis for review. Therefore, we affirm the Board's decision to uphold the ALJ's findings on causa-
tion.

11

III.

The Board did not err in affirming the ALJ's findings, and so the Board's order is hereby

AFFIRMED.

NIEMEYER, Circuit Judge, dissenting:

Because I believe that the ALJ's analysis of the medical evidence in this case fell far short of meeting established standards for evaluating such evidence, I would remand this case to the Board with instructions to remand it to the ALJ for further analysis.

The questions of whether Vance had pneumoconiosis and whether pneumoconiosis was the cause of his disability are extremely close. Even Vance's own doctors described symptoms that are more consistent with cigarette smoking than with pneumoconiosis. Accordingly, whether the ALJ properly analyzed the medical evidence is critical to the proper resolution of Vance's claim.

It would appear first that the ALJ simply failed to follow the requirements of applicable regulations in evaluating the x-ray evidence. He placed most reliance on readings by physicians whose qualifications are not in the record, acting directly contrary to 20 C.F.R. §§ 718.202(a)(1) & 718.102. It was for good reason that the Board did not rely on the ALJ's finding with respect to the x-ray evidence in affirming the ALJ. It is also for this reason that we must be particularly vigilant to disqualify any medical report to the extent that it relies on a positive x-ray finding.

The majority, reviewing the basis of the Benefits Review Board decision but perhaps also recognizing the flaws in the ALJ's evaluation of the x-ray evidence, addresses only whether Vance established the existence of pneumoconiosis by medical evidence under 20 C.F.R. § 718.202(a)(4). But the ALJ's analysis under (a)(4) is just as flawed. The ALJ characterized the physicians on whom he relied as having found that the claimant "suffered from coal workers' pneumoconiosis, or at least, could not rule it out." He relied on the reports of Drs. Forehand, Sargent, and Rasmussen.

12

At the outset, in evaluating the evidence of Dr. Sargent, the ALJ clearly erred. The ALJ concluded that Dr. Sargent could not "rule out" pneumoconiosis, but that is directly contrary to his opinion. While Dr. Sargent _initially_ stated that he could not rule out pneumoconiosis on the basis of an initial reading of an x-ray, his later test results, as well as a review of other physicians' readings and test results, ultimately convinced him that Vance did not suffer from pneumoconiosis and that Vance's overall impairment was due to cigarette smoking.

With respect to Dr. Forehand, the record does not provide enough information to determine to what extent he relied on x-rays. If he relied on a positive x-ray, then that is not an independent opinion that would support a finding of pneumoconiosis under§ 718.204(a)(4). Moreover, Dr. Forehand could only conclude that his findings "_were consistent with_ coal worker's pneumoconiosis." (Emphasis added).

Finally, Dr. Rasmussen's findings were the most ambiguous. He relied expressly on positive x-ray testimony, which would disqualify his opinion under § 718.204(a)(4), at least to the extent of his reliance on a positive x-ray. Moreover, Dr. Rasmussen concluded that there was a "moderate partially _reversible_ obstructive ventilatory impair-ment" (emphasis added), an indication that the disease was caused by cigarette smoking and not by pneumoconiosis. Pneumoconiosis is irreversible. _See Mullins Coal Co. v. Director, Officer of Workers' Compensation Programs_, 484 U.S. 135, 151 (1988).

Against this most thin and perhaps even disqualified evidence, the ALJ failed to give reasoned opinions as to why he was discrediting the opinions of the doctors offered by the coal mine operator that Vance did not have pneumoconiosis and that the vast number of x-rays did not support a finding of pneumoconiosis.

On the issue of whether pneumoconiosis caused Vance's disability, the ALJ likewise provided inadequate analysis, concluding simply, on the basis of opinions from Drs. Forehand and Rasmussen, that the claimant had established that his total disability was due to pneumo-coniosis. The ALJ offered no rationale for crediting these doctors over Drs. Fino, Sargent, and Renn, all of whom had stated that pattern of partial _reversible_ obstruction which Vance demonstrated was not consistent with pneumoconiosis.

13

Finally, I should not omit noting that the Director has urged us to remand this case for similar reasons.

For the foregoing reasons, I respectfully dissent.

14