994 F.2d 1093
 Nancy GRIZZLE, Widow of Bramble Grizzle, Petitioner,
v.
PICKANDS MATHER AND COMPANY/CHISOLM MINES; Director, Office
of Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 91-1078.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 5, 1993.
Decided June 2, 1993.
 
 Vernon Mandel Williams, Wolfe & Farmer, Norton, VA, argued (Bobby S. Belcher, on brief), for petitioner.
 Christian P. Barber, Office of the Sol., U.S. Dept. of Labor, Mark Elliott Solomons, Arter & Hadden, Washington, DC, argued (Marshall J. Breger, Sol. of Labor, Donald S. Shire, Associate Sol. for Black Lung Benefits, Patricia M. Nece, Counsel for Appellate Litigation, Jeffrey S. Goldberg, Office of the Sol., U.S. Dept. of Labor, Laura Metcoff Klaus, Arter & Hadden, Washington, DC, on brief), for respondents.
 Before HALL and LUTTIG, Circuit Judges, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Nancy Grizzle petitions for review of an order of the Benefits Review Board, which affirmed an administrative law judge's denial of her claim for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945. Because substantial evidence supported the ALJ's decision, we affirm.
 
 I.
 
 2
 Petitioner Nancy Grizzle is the widow of Bramble Grizzle, a coal miner who labored in the mines in various capacities for thirty-five years before ceasing work in June 1983 due to health problems. Respondent Pickands Mather and Company employed Mr. Grizzle from 1975 through 1983. Mr. Grizzle, who had smoked one pack of cigarettes per day for the last forty years of his life, died on December 28, 1983, and on January 24, 1984, petitioner filed a claim for black lung survivor's benefits. Petitioner's claim eventually was forwarded to the Department of Labor's Office of Administrative Law Judges.
 
 
 3
 An ALJ conducted a hearing on petitioner's claim on October 19, 1987. After also considering medical records, exhibits, and deposition testimony, he issued a decision and order on March 25, 1988, denying petitioner benefits. In his decision, the ALJ first made a number of undisputed factual findings, most notably that Mr. Grizzle had pneumoconiosis to some degree at the time of his death, that he also had suffered from severe emphysema and heart disease, and that the direct cause of his death was a pulmonary hemorrhage caused by lung cancer. See J.A. at 14-19, 21. The ALJ then evaluated the testimony and opinions of a number of physicians on whether pneumoconiosis was a substantially contributing cause or factor leading to Mr. Grizzle's death or if complications of pneumoconiosis caused his death, id. at 1819, prerequisites to recovery of benefits under 20 C.F.R. § 718.205(a), (c)(1)-(4).[1]
 
 
 4
 Dr. Alfredo Soliva, Mr. Grizzle's treating physician, opined that pneumoconiosis contributed to Mr. Grizzle's death by weakening his heart and lowering his resistance so that he could not withstand bleeding caused by his cancer. Id. at 38-39. Soliva testified that, in his opinion, pneumoconiosis had caused Mr. Grizzle's emphysema and heart problems, and may well have caused the cancer that ultimately killed him, id. at 50, 52, 70; in fact, Soliva "was completely convinced by all the presenting clinical evidence that all [of Mr. Grizzle's] problems stemmed from his pneumoconiosis and it's [sic] complications." Id. at 43.
 
 
 5
 Other physicians offered contradictory opinions. Dr. Paul Nickerson, one of three physicians at the Cleveland Clinic Foundation who had thoroughly examined and treated Mr. Grizzle four months prior to his death, diagnosed Mr. Grizzle as having had a mild case of pneumoconiosis, but a severe case of emphysema. In his opinion, Mr. Grizzle was totally disabled due to lung problems resulting from the emphysema at the time he examined him. Dr. Nickerson believed that the emphysema could be attributed to cigarette smoking and that the effect of pneumoconiosis on Mr. Grizzle's lung problems, if any, was "negligible" and "of no major import." Id. at 152, 154, 156, 169.
 
 
 6
 Dr. Echols Hansbarger, a Board-certified pathologist, reviewed Mr. Grizzle's autopsy protocol, including various lung tissue slides. He diagnosed the miner as having been severely afflicted with emphysema, which, he concluded, was totally unrelated to the mild ("just barely there") pneumoconiosis from which he also suffered. Id. at 85, 89, 97. Hansbarger testified unequivocally that there is no documented causal link between pneumoconiosis and lung cancer. Id. at 82, 87-88. He repeatedly testified that, in his opinion as a pathologist, "[pneumoconiosis] did not contribute in any way" to Mr. Grizzle's death. Id. at 106; see also id. at 80, 97, 105. Last, Hansbarger opined that, "based on reasonable medical certainty, ... the pulmonary tumor [that killed Mr. Grizzle] was not related to his coal worker's disease in any way," and that "the carcinoma of the lung that killed [Mr. Grizzle] was caused by cigarette smoking. There isn't any question in my mind about that." Id. at 81-82.[2]
 
 
 7
 Weighing the evidence, the ALJ found Dr. Hansbarger's opinion, which was corroborated by that of Dr. Nickerson, to be far more persuasive and reliable, and better supported by the medical record, than that of Dr. Soliva. He concluded, as a result, that
 
 
 8
 [t]he degree of pneumoconiosis involved in Mr. Grizzle's lung problem was insufficient to contribute to the ultimate demise of Mr. Grizzle. Accordingly, although Mr. Grizzle suffered from coal workers' pneumoconiosis at the time of his death, such pneumoconiosis was not the cause of his demise, nor was it a substantially contributing or a complicating factor in his ultimate and untimely death.
 
 
 9
 Id. at 21. He consequently denied petitioner's claim.
 
 
 10
 The Benefits Review Board affirmed. Emphasizing that it is the province of the ALJ to make credibility determinations and to weigh the evidence, the Board concluded that the ALJ had provided a well-reasoned explanation for denying benefits that was fully supported by substantial record evidence. Id. at 5. This petition for review followed.
 
 II.
 A.
 
 11
 Our review of the Board's decision is governed by section 21 of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921. 30 U.S.C. § 932(a); Director, OWCP v. Consolidation Coal Co., 923 F.2d 38, 40 (4th Cir.1991). Like the Board, we must affirm the factual findings of the ALJ if they are supported by substantial evidence. Consolidation Coal Co., 923 F.2d at 40-41; Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189 (4th Cir.1985). Subject to the substantial evidence requirement, however, as the Board noted, "[t]he ALJ has sole power to make credibility determinations and resolve inconsistencies in the evidence." Freeman United Coal Mining Co. v. Benefits Review Bd., 912 F.2d 164, 168 (7th Cir.1990); see also Tennessee Consol. Coal Co. v. Crisp, 866 F.2d 179, 185 (6th Cir.1989).
 
 B.
 
 12
 Petitioner's principal contention is that Dr. Soliva's diagnoses raised at least some doubt as to whether pneumoconiosis was a substantially contributing cause of her husband's death and that the ALJ erred by failing to resolve this doubt in her favor.
 
 
 13
 We know of no authority holding that any doubt created by a claimant's evidence must be resolved in the claimant's favor. Such a rule would eviscerate the complex statutory and regulatory framework created by Congress to determine eligibility for black lung benefits; the claimant would prevail any time she could produce evidence supporting entitlement, regardless of the weight of evidence marshaled against her claim.
 
 
 14
 This court, however, has embraced the "true doubt rule," which favors claimants in certain limited circumstances and for the application of which petitioner also argues. When there is conflicting, but equally probative, evidence for and against the existence of a particular fact in the benefits inquiry, or, ultimately, when the evidence for and against entitlement to black lung benefits is equiponderate, the true doubt rule requires that the benefit of the doubt be given to the claimant. Adkins v. Director, OWCP, 958 F.2d 49, 52 n. 4 (4th Cir.1992) ("Equally probative evidence creates a 'true doubt,' which must be resolved in favor of the miner." (emphasis added)); Greer v. Director, OWCP, 940 F.2d 88, 90-91 (4th Cir.1991); see also Br. of Director, OWCP [hereinafter Br. of Director] at 4 ("[t]rue doubt is not any doubt").[3] As the Director of OWCP observes, the true doubt rule is "a narrow test applicable only in very specific situations." Br. of Director at 21. It applies only "[i]n cases that are simply too close to call." Id. at 3; see also id. at 6 (same). Very seldom will the evidence in support of and against entitlement be equally probative and equally persuasive. Indeed, it would seem to be the unusual case in which an ALJ, intent on properly weighing the competing evidence, will come to the conclusion that neither side's evidence was even slightly more convincing than the other's. Particularly in cases such as this, whose resolution depends not so much on whether the fact-finder chooses to accept one objective medical test over another equally reliable but conflicting test, see, e.g., Greer, 940 F.2d at 89-91 (two contemporaneous, equally reliable pulmonary function tests, one supporting the claim, one not, held to give rise to true doubt), but on whether he accepts one doctor's interpretation of the medical data over another's, the likelihood of such equipollence would appear to be minimal.
 
 
 15
 Petitioner plainly is not entitled to the presumption of the true doubt rule. The ALJ did not find that the evidence presented by Nancy Grizzle was equally as probative and persuasive as that offered by Pickands Mather. On the contrary, on the dispositive issue of whether pneumoconiosis was a substantially contributing cause of Mr. Grizzle's death, the ALJ specifically found that the opinion of Dr. Hansbarger as to the relationship of pneumoconiosis to Mr. Grizzle's emphysema, lung cancer, and death was far more persuasive and better supported by the record than the contrary views of Dr. Soliva. See Br. of Director at 5 (under true doubt rule, "if a claimant produces evidence that, standing alone, is sufficient to establish entitlement, but the ALJ then finds that evidence outweighed by contradictory evidence, the claim will fail").
 
 
 16
 Petitioner argues that Dr. Soliva's opinion, as that of her husband's treating physician, was entitled to greater weight than were the contrary opinions of Drs. Hansbarger and Nickerson, and that when Dr. Soliva's opinion is accorded its appropriately greater weight, the true doubt rule is implicated. We reject this contention. Neither this circuit nor the Benefits Review Board has ever fashioned either a requirement or a presumption that treating or examining physicians' opinions be given greater weight than opinions of other expert physicians.[4] We have often stated that as a general matter the opinions of treating and examining physicians deserve especial consideration. We stated, for example, in Hubbard v. Califano, 582 F.2d 319, 323 (4th Cir.1978), that "[we] place[ ] great reliance on a claimant's treating physician," and, citing Hubbard, in King v. Califano, 615 F.2d 1018, 1020 (4th Cir.1980), that "[we] place[ ] great reliance on the conclusions of a claimant's examining physician."[5] In neither case, however, did we suggest, much less hold, that the opinions of treating or examining physicians must be accorded greater weight than opinions of other physicians.[6] It is, of course, one thing to say that we give great weight to the treating or examining physician's opinion; it is quite another to say that as a matter of law we give greater weight to such an opinion than to opinions by other physicians. The ALJ therefore was not required to defer to Dr. Soliva's diagnoses or to accord them greater weight than the opinions of the other physicians. He was fully entitled to credit the contrary opinions of Dr. Hansbarger, a Board-certified pathologist who reviewed Mr. Grizzle's autopsy protocol, which were in turn corroborated by Dr. Nickerson. As we said in Gordon, "the testimony of a non-examining physician can be relied upon when it is consistent with the record." 725 F.2d at 235.
 
 
 17
 The true doubt rule, in sum, could have potential application in this case, as petitioner's counsel candidly conceded at argument, only were we to reverse the ALJ's credibility determinations and reweigh the evidence ourselves. This we are legally unable to do.[7]
 
 C.
 
 18
 Petitioner presses two other arguments that we discuss briefly. First, she contends that the ALJ improperly discredited the opinion of Dr. Soliva based on his misunderstanding of one portion of Soliva's testimony. During his deposition, Dr. Soliva testified that he had diagnosed Mr. Grizzle as having complicated rather than simple pneumoconiosis.[8] He went on to explain that, by this, he did not mean "complicated" in the sense of black lung definitions, but "complicated in a sense there is EKG evidence of pulmonary hypertension and right-sided failure." J.A. at 48. Petitioner contends that Dr. Soliva merely meant by this testimony that Mr. Grizzle's pneumoconiosis caused other medical complications. She argues that the ALJ, however, thought that Dr. Soliva had actually diagnosed complicated pneumoconiosis, and that he ignored the remainder of Dr. Soliva's opinion as not credible because a diagnosis of complicated pneumoconiosis could not reasonably have been rendered on this record.
 
 
 19
 This argument, too, is without merit. It is evident from the record that the ALJ did not misunderstand Dr. Soliva in the manner suggested by petitioner. The ALJ specifically addressed the potential confusion caused by Dr. Soliva's inexact testimony. While the ALJ noted that Soliva had diagnosed complicated pneumoconiosis, he went on to state that "[b]y complicated pneumoconiosis Dr. Soliva meant complicated in the sence [sic] of pulmonary hypertension and right sided heart failure. He did not mean complicated in terms of black lung definitions or classifications." Id. at 14-15. It is also clear that the ALJ did not ignore the remainder of Dr. Soliva's testimony. He thoroughly considered Dr. Soliva's full opinion, including his diagnosis that pneumoconiosis had caused all of Mr. Grizzle's medical problems. He simply rejected Dr. Soliva's opinion ultimately, because he found those of Drs. Hansbarger and Nickerson to be more persuasive.
 
 
 20
 Finally, petitioner argues that her case should be remanded to an ALJ for reconsideration in light of this court's ruling in Shuff v. Cedar Coal Co., 967 F.2d 977 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993). In Shuff, which was decided after the decisions of the ALJ and Board in the instant case, the court, construing 20 C.F.R. § 718.205(c), held that "pneumoconiosis should be considered a 'substantially contributing cause' of a miner's death if it actually hastened the miner's death." Id. at 979-80. According to petitioner, the ALJ in this case did not consider whether pneumoconiosis "actually hastened" Mr. Grizzle's death, and therefore a remand for consideration in light of Shuff is required.
 
 
 21
 We disagree. The ALJ essentially considered this issue in his extensive review of the evidence. In the final analysis, however, he fully credited the well-supported opinion of Dr. Hansbarger, who testified repeatedly that pneumoconiosis did not contribute in any way to Mr. Grizzle's demise, see, e.g., J.A. at 80, 97, 105-06, over Dr. Soliva's opinion that pneumoconiosis had brought on Mr. Grizzle's death. Under these circumstances, further consideration of whether pneumoconiosis actually hastened Mr. Grizzle's death could serve no purpose.
 
 III.
 
 22
 Our role in reviewing adjudications of black lung claims is carefully and purposefully circumscribed. We are not to substitute our view of the evidence for that of the ALJ. We are only to ensure that there has been faithful adherence to the law. There is no question in this case that the law has been scrupulously followed. The decision of the Benefits Review Board is affirmed.
 
 
 23
 AFFIRMED.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 24
 Bramble Grizzle worked in the coal mines for thirty-five years, and he retired because of failing health in June, 1983. Six months later, he died of a frightful array of pulmonary afflictions. His immediate cause of death was a pulmonary hemorrhage, in turn caused by lung cancer. He suffered from emphysema, pulmonary edema, and clinical pneumoconiosis. In addition to coal dust, Grizzle's lungs were subjected to a pack of cigarettes per day for forty years. Nevertheless, to receive survivor's black lung benefits, his widow must show only that, whatever the deleterious--even inevitably fatal--effect of cigarette smoking, Grizzle's death was hastened in some way by the impact of coal dust exposure on his lungs. Inasmuch as I do not believe that the ALJ posed or answered this question, I would remand for reconsideration. Accordingly, I dissent.
 
 I.
 
 25
 The basic reason I dissent is simply stated. In Shuff v. Cedar Coal Co., 967 F.2d 977 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993), we endorsed, over an employer's protest, the Director's interpretation of "substantially contributing cause of death": pneumoconiosis substantially contributes "if it serves to hasten death in any way." 967 F.2d at 979. In Shuff, the claimant's decedent had died of pneumonia, which may have been related to black lung, but his primary ailment was pancreatic cancer. Indeed, his death from pancreatic cancer was "imminent" had the pneumonia not intervened. Still, we accepted the Director's interpretation and remanded for reconsideration.
 
 
 26
 In this case, neither the ALJ nor BRB mentioned the "hastens death in any way" standard. The majority concludes that the "hastens death" determination was made implicitly, but I think there is no way to know that from the decision. Accordingly, I would remand for reconsideration under the Shuff standard.[1]II.
 
 
 27
 Moreover, as in any case, I would instruct the ALJ on remand to bear in mind that "true doubt" is to be resolved in favor of the claimant. The validity of this rule, which would only come into play if the evidence is equally probative, was the primary battleground in the briefs and argument.
 
 
 28
 The employer argues that, because the Black Lung Act incorporates the procedures of the Longshore and Harbor Workers' Compensation Act, which in turn incorporates the Administrative Procedures Act, the APA's general allocation of burden of proof applies: the burden is always on the proponent of a fact to prove it. Because the claimant must prove entitlement to black lung benefits, reasons the employer, the true doubt rule is invalid. If the evidence is equally probative, the claimant, as the proponent of the factual assertion, should lose. This argument seems to have been raised contemporaneously throughout the coalfields, as it has been ruled on by three different circuits since we heard argument in this case. The Third Circuit has recently declared the true doubt rule invalid, but the Sixth and Seventh Circuits have upheld it. Greenwich Collieries v. DOWCP, 990 F.2d 730 (3rd Cir.1993); Skukan v. Consolidation Coal Co., 993 F.2d 1228 (6th Cir.1993); Freeman United Coal Mining Co. v. DOWCP, 988 F.2d 706 (7th Cir.1993). Inasmuch as resolving this issue is not necessary to its decision, the majority chooses not to enter this intercircuit fray. See supra at 1098 n. 7. However, because I would remand, I will address the matter.
 
 
 29
 The most direct response to the employer's argument is that the Supreme Court has flatly held that APA § 7(d) allocates only the burden of going forward, rather than the ultimate burden of persuasion. NLRB v. Transportation Management Corp., 462 U.S. 393, 403-404 n. 7, 103 S.Ct. 2469, 2475 n. 7, 76 L.Ed.2d 667 (1983). However, there are several other reasons to uphold the true doubt rule's validity. First of all, the Director's interpretation of the black lung statute is entitled to substantial deference. Pauley v. BethEnergy Mines, --- U.S. ----, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991). Second, many courts, including this one, have applied the true doubt rule, and the rule has been discussed without criticism by the Supreme Court. Greer v. DOWCP, 940 F.2d 88, 90 n. 3 (4th Cir.1991); Old Ben Coal Co. v. Luker, 826 F.2d 688 (7th Cir.1987); Ware v. DOWCP, 814 F.2d 514 (8th Cir.1987); Mullins Coal Co. v. DOWCP, 484 U.S. 135, 156-157 n. 29, 108 S.Ct. 427, 438-39 n. 29, 98 L.Ed.2d 450 (1987) (where presumption is invoked by a single piece of evidence, "a single item of equally probative contrary evidence will not be sufficient to rebut the presumption.") Third, the true doubt rule has been recognized under the Longshore Act for decades, see Young & Co. v. Shea, 397 F.2d 185, 188 (5th Cir.1968), cert. denied, 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969) ("all doubtful fact questions are ... resolved in favor of the injured employee" (collecting cases)), and the Black Lung Benefits Act's incorporation of the APA is through the Longshore Act. Finally, the legislative history uniformly supports giving a miner the benefit of the doubt.[2] Indeed, even while sponsoring the 1981 amendments, which tightened eligibility rules, Senator Hatch stated that "the burden would, of course, be on [the employer] to present medical evidence to rebut evidence by the survivor which otherwise would appear to establish eligibility for benefits." 127 Cong.Rec. 31978 (1981).
 
 
 30
 DOWCP has interpreted the Act to put the initial burden of production on the claimant, and unless he establishes a prima facie case, the claim is denied. However, because of the evidentiary difficulties in proving the existence and severity of the disease, the Director has placed a burden of persuasion on the employer to rebut a prima facie showing of entitlement. In this light, the "true doubt" rule is entirely consistent with the ordinary "preponderance of the evidence" standard, because the employer has the burden of persuasion, and the claimant wins all ties.
 
 
 31
 There is nothing revolutionary about evidentiary leniency toward claimants under a workers' compensation statute, not only because such statutes have a beneficent purpose, but also because liberality toward claimants is the quid pro quo for employers' immunity from potentially ruinous common-law tort suits. Employers who complain about an occasional undeserved award of benefits should ponder whether they would rather take their chances in an ordinary tort suit.
 
 
 32
 In short, I think that the true doubt rule is valid.
 
 III.
 
 33
 Next, inasmuch as the evidentiary dispute in this case pitted Grizzle's treating physician against a whole battery of opposing experts, I would like to say a few words about the way black lung claims are litigated and expert opinions are weighed.
 
 
 34
 The Sixth Circuit recently expressed considerable exasperation at what it perceived as abuses of expert testimony in black lung cases. Woodward v. Director, OWCP, 991 F.2d 314 (6th Cir.1993). Without necessarily endorsing every word of its criticisms, I will say that I share the Sixth Circuit's general frustration. The black lung program has abruptly changed course several times over the past twenty-five years, each as a congressional reaction to the stinginess or profligacy of the preceding regime. With all its twists and turns, the program has still never traveled on a path satisfactory to everyone.
 
 
 35
 The current norm is the contest of physician's reports. If this exercise ever had a fresh, truth-seeking outlook, it has long since faded. Tell me where the miner lives and the name of the respondent employer, and I can make a pretty accurate guess as to who the various experts are and what their reports say. Though the employer's resources usually translate into more experts, I am not singling out one side for blame. Disability, or the lack thereof, seems inevitably in the eye of the paid beholder.
 
 
 36
 I don't know how this tired, scandalously slow process can be rejuvenated. Maybe Congress will "fix" it yet another time; maybe not. I do think, though, that the current battle of mimeographed opinions can regain some vigor only if the parties are freely permitted to make an evidentiary record concerning the potential biases of the experts. See Robinson v. Pickands Mather & Co., 914 F.2d 35, 36 (4th Cir.1990) (ALJ denied claimant opportunity to show bias of employer's expert through expert's financial records).
 
 
 37
 Finally, on a related point, though I agree with the majority's general holding that a treating physician's opinion is not entitled to per se dispositive weight, we should not forget that a treating physician knows his patient as a human being rather than as a claim number, and his opinions are generally developed in an attempt to treat the patient rather than to provide an opinion for hire. Thus, a treating physician has at least a basis for credibility that should not be disregarded without articulable cause.
 
 
 38
 Because I would remand for reconsideration in light of Shuff v. Cedar Coal Co., I respectfully dissent.
 
 
 
 [1]
 20 C.F.R. § 718.205 provides in relevant part:
 (a) Benefits are provided to eligible survivors of a miner whose death was due to pneumoconiosis.
 ....
 (c) For the purpose of adjudicating survivors' claims filed on or after January 1, 1982, death will be considered to be due to pneumoconiosis if any of the following criteria is met:
 (1) Where competent medical evidence established that the miner's death was due to pneumoconiosis, or
 (2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, or
 (3) Where the presumption set forth at § 718.304 is applicable.
 (4) However, survivors are not eligible for benefits where the miner's death was caused by a traumatic injury or the principal cause of death was a medical condition not related to pneumoconiosis, unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death....
 The ALJ found, and the parties now agree, that Mr. Grizzle's death was due to lung cancer, not pneumoconiosis, and that subsections (c)(3) and (c)(4) are inapplicable to this case, leaving subsection (c)(2) as petitioner's only possible source of benefits.
 
 
 [2]
 The ALJ also considered the less extensive reports provided by Drs. Carlos DeLara and George Zaldivar, but found them generally unpersuasive because they were equivocal and poorly explained
 
 
 [3]
 The true doubt rule was conceived by the Benefits Review Board in 1978, see Provance v. United States Steel Corp., 1 BLR 1-483 (1978), and has been explicitly approved by several courts of appeals, see, e.g., Freeman United Coal Mining Co. v. OWCP, 988 F.2d 706 (7th Cir.1993). The Director of the Office of Workers' Compensation programs admits that "[t]he [Black Lung Benefits] Act does not explicitly allocate the risk of non-persuasion in black lung cases." See Br. of Director at 3. He defends the rule on the ground that "[t]he legislative history of the Act ... supports continued use of the true doubt rule." Id.; see also id. at 13 ("The origin of the true doubt rule can be traced back to the legislative history surrounding the first amendments to the Act.")
 We have previously implied that the Supreme Court in footnote 29 of its opinion in Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), expressed approval of this rule, see, e.g., Greer, 940 F.2d at 90 n. 3; Adkins, 958 F.2d at 52; see also Br. of Director at 25-26. It did not. In that footnote, in the course of addressing an entirely different issue, the Court merely quoted the Secretary of Labor's comment that "[t]he Act embodies the principle that doubt is to be resolved in favor of the claimant." See Mullins, 484 U.S. at 156 n. 29, 108 S.Ct. at 438 n. 29 (quoting 43 Fed.Reg. 36826 (1978)). The Court has never passed on the validity of the true doubt rule, although it has noted that the Board adheres to the rule, see id. at 144 n. 12, 108 S.Ct. at 432 n. 12.
 
 
 [4]
 The Board, for example, has consistently held that "[a]n administrative law judge need not mechanically afford a treating physician's opinion the greatest weight," Burns v. Director, OWCP, 7 BLR 1-597, 1-600 (1984), and that "[t]here is also no rule that a non-examining physician's opinion must be given less weight than an examining physician's opinion," King v. Cannelton Indus., Inc., 8 BLR 1-146, 1-149 (1985)
 
 
 [5]
 Both of these statements were dicta, because in neither Hubbard nor King did the court address the question of whether a treating or examining physician's opinion should be given different weight from the opinion of a non-treating or non-examining physician
 
 
 [6]
 Hubbard, and to the extent that it drew wholly upon the authority of Hubbard, King, relied upon our holding in Martin v. Secretary, 492 F.2d 905 (4th Cir.1974), for their assertions that we place great reliance on the opinions of treating and examining physicians. See Hubbard, 582 F.2d at 323; King, 615 F.2d at 1020. We also did not hold in Martin that a treating or examining physician's opinion generally is entitled to greater weight than opinions of other physicians. We narrowly held in that case only that, standing alone, a non-examining or non-treating physician's opinion that the claimant was not disabled could not constitute substantial evidence where that opinion is "at odds with the objective medical facts, claimant's uncontradicted subjective evidence, the opinion evidence of claimant's examining physicians, and her vocational background." 492 F.2d at 908; see Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir.1984) ("testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record" (citing Martin)); Eagle v. Armco, Inc., 943 F.2d 509, 511 n. 1 (4th Cir.1991) (same); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986) (same). Of course, the circumstances in the present case are entirely different from those in Martin. Here, the ALJ concluded that the non-examining, non-treating physician's opinion of Dr. Hansbarger was both consistent with the objective medical record and supported by the opinion of an examining and treating physician, Dr. Nickerson
 
 
 [7]
 As an alternative response to petitioner's argument that she is entitled to the benefit of the true doubt rule, Pickands Mather contends that the true doubt rule violates the Administrative Procedure Act (APA), because the rule allows a claimant to prevail by proving her case by less than the APA-required preponderance of the evidence, see 5 U.S.C. § 556(d). In this regard, Pickands Mather notes that section 12 of the APA, 5 U.S.C. § 559, provides that the Act's terms may be modified only expressly through statute, and that the Black Lung Benefits Act has not been modified to accommodate a true doubt rule. We have not previously considered the validity of the true doubt rule in the face of an APA challenge, and we need not do so here. See Greenwich Collieries v. Director, OWCP, 990 F.2d 730 (3d Cir.1993) (holding true doubt rule invalid under APA); Skukan v. Consolidation Coal Co., 993 F.2d 1228 (6th Cir.1993) (sustaining rule against APA challenge); Freeman United Coal Mining Co. v. OWCP, 988 F.2d at 712 (same)
 
 
 [8]
 "Complicated pneumoconiosis" is a term of art meaning an extremely severe case of pneumoconiosis which, if diagnosed by X-ray, yields opacities in the lung greater than one centimeter in diameter, or if diagnosed by biopsy or autopsy, yields massive lesions in the lung. See 20 C.F.R. § 718.304. If a miner suffers from complicated pneumoconiosis at the time of his death, his survivors are eligible for black lung benefits. 20 C.F.R. § 718.205(c)(3). It is undisputed that Mr. Grizzle did not have complicated pneumoconiosis
 
 
 [1]
 The employer also requests that we graft a de minimis exception onto the Shuff "hastens death in any way" standard. The Director resists this proposal. According to the Director, a de minimis exception would simply add an unworkable subjective layer to a determination that is already complex enough. Is a day of life substantial? Is an hour de minimis? Does it depend on whether the dying person is in a coma, quietly contemplative, or consumed by fear? These are questions for philosophers and theologians, not the Department of Labor
 
 
 [2]
 See, e.g., 1972 U.S.Code Cong. & Admin.News 2305, 2315 (Senate committee reports that "in the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the deceased miner or his survivors"); S.Rep. No. 209, 95th Cong. 1st Sess. (1977) (Senate Human Resources Committee "expresses its expectation that the Secretary of Labor will promulgate standards which give the benefit of any doubt to the coal miner.")