**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WELLMORE COAL CORPORATION,
Petitioner,

v.

FEDERAL MINE SAFETY & HEALTH
REVIEW COMMISSION; BILLY R.
MCCLANAHAN,
Respondents.

No. 97-1280

On Petition for Review of an Order
of the Federal Mine Safety and Health Review Commission.
(VA-95-9-D)

Argued: October 28, 1997

Decided: December 30, 1997

Before RUSSELL and WIDENER, Circuit Judges, and
TRAXLER, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Donna Colberg Kelly, SMITH, HEENAN & ALTHEN,
Charleston, West Virginia, for Petitioner. Martin Douglas Wegbreit,
CLIENT CENTERED LEGAL SERVICES OF SOUTHWEST VIR-
GINIA, INC., Castlewood, Virginia, for Respondents. **ON BRIEF:**
Ronald L. King, ROBERTSON, CECIL, KING & PRUITT, Grundy,

Virginia; Ronald E. Meisberg, SMITH, HEENAN & ALTHEN, Washington, D.C., for Petitioner.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The issue presented on appeal is whether the Federal Mine Safety and Health Review Commission (the "Commission") properly reversed an administrative law judge's ("ALJ's") determination that Wellmore Coal Corporation ("Wellmore") did not discriminate against an independent contractor. Because we find that the ALJ's determination was supported by substantial evidence, we hold that the Commission misapplied its statutory standard of review. Accordingly, we reverse the Commission's decision.

I.

In 1978, Billy R. McClanahan ("McClanahan") began working as a haulage truck driver for Wellmore, which mines and processes coal in Southwestern Virginia and Eastern Kentucky. On August 20, 1992, Wellmore informed its drivers that it was terminating its trucking business, but that former drivers could purchase the company's trucks and continue to haul refuse as independent contractors. McClanahan purchased the 1990 Ford truck he had driven as a Wellmore employee and began hauling coal refuse for Wellmore as an independent contractor.

In December 1993 or January 1994, Wellmore opened a new refuse area. The truck route to the new area was approximately two miles longer than the previous route and included a one-lane road over a hill, thus taking longer to travel. At approximately this time, in an effort to increase refuse removal, Wellmore instituted a policy which

2

prohibited a trucker with a load weighing less than 24 tons from hauling for the remainder of his shift or the following day.**1** Wellmore enforced the policy through random weighing.

Wellmore's imposition of the weight requirement led to a series of events that culminated with the termination of McClanahan's contract. On September 12, 1994, McClanahan's truck weighed 23.65 tons and he was not permitted to haul the remainder of that day or his next shift. When he returned on September 14, 1994, his truck weighed 22.74 tons, and again he was not allowed to haul the remainder of that day or his next shift. On September 19, 1994, his truck weighed 23.50 tons, and once more, Wellmore prohibited him from hauling the remainder of that day or his following shift.

On September 22, 1994, the trucking foreman and two members of Wellmore's management met with McClanahan and discussed his failure to abide by the weight requirement. According to McClanahan, he had consistently protested the weight requirement, maintaining that hauling 24 or more tons constituted an unacceptable safety hazard. Wellmore offered McClanahan an alternative route hauling refuse from another plant that paid drivers by the ton rather than by the hour. When McClanahan rejected this offer, Wellmore informed him that his contract would be terminated the next time his truck was underweight. Later that day, McClanahan's truck weighed 22.96 tons, and he was terminated as an independent contractor. McClanahan then instituted a discrimination suit against Wellmore.

II.

Under the Federal Mine Safety and Health Act of 1977 (the "Mine Act"),**2** miners**3** generally have the right to complain of a safety or health hazard and refuse to perform work which they perceive as haz-

_____

**1** Wellmore's Vice President stated that the policy was enacted to ensure that the drivers, who were paid to haul by the hour, and not by the ton, were hauling a sufficient amount.
**2** 30 U.S.C. §§ 801-962 (1994).
**3** The Mine Act defines "miner" as "any individual working in a coal or other mine." 30 U.S.C. § 802(g) (1994). Therefore, McClanahan is covered by the provisions of the Act.

ardous, provided that the complaints and work refusals are based upon the miner's good faith, reasonable belief in a hazardous condition.[4] Pursuant to § 105(c) of the Mine Act,[5] McClanahan filed a discrimination suit against Wellmore, claiming he was fired because he objected to hauling loads that constituted an unacceptable safety hazard. After an investigation, the Mine Safety and Health Administration ("MSHA") concluded that no violation had occurred. On January 6, 1995, McClanahan filed a complaint on his own behalf with the Commission, which then assigned the case to an ALJ.

A.

On June 6, 1995, the ALJ conducted a 15-hour hearing in which both parties presented testimony, submitted evidence, and cross-examined witnesses. The ALJ determined that, while McClanahan had expressed general safety concerns regarding the weight requirement, his concerns were not based on a good faith belief that hauling loads of 24 or more tons was hazardous.

_____

[4] **Gilbert v. FMSHRC**, 866 F.2d 1433, 1439 (D.C. Cir. 1989); Secretary ex rel. Robinette v. United Castle Coal Co., 3 F.M.S.H.R.C. 803, 812 (1981).

[5] 30 U.S.C. § 815(c) (1994), provides in part that:

> (c)(1) No person shall discharge or in any manner discriminate against or cause to be discharged or cause discrimination against or otherwise interfere with the exercise of the statutory rights of any miner . . . because such miner . . . has filed or made a complaint under or related to this chapter, including a complaint notifying the operator . . . of an alleged danger or safety or health violation in a coal or other mine . . .

> (c)(2) Any miner . . . who believes that he has been discharged, interfered with, or otherwise discriminated against by any person in violation of this subsection may . . . file a complaint with the Secretary alleging such discrimination. . . .

> (c)(3) If the Secretary, upon investigation, determines that the provisions of this subsection have not been violated, the complainant shall have the right . . . to file an action on his own behalf before the Commission charging discrimination or interference in violation of paragraph (1). . . .

In making his determination, the ALJ emphasized that "prior to becoming a truck owner McClanahan repeatedly hauled loads weighing more than 24 tons without making known his supposed safety concerns to either management or to MSHA."[6] The ALJ also noted that as an independent contractor, McClanahan had assumed financial responsibility for the truck's upkeep and maintenance, and therefore, McClanahan's concerns "were those of a truck owner for the cost of the requirement to his business and not those of a driver for his and others' safety."[7]

Finally, the ALJ concluded that McClanahan's failure to complain to MSHA about the purported safety hazards indicated his lack of good faith. McClanahan testified that:

> I . . . called MSHA about the hazardous conditions and at the time I didn't write down who I talked to or anything. They just said they couldn't help.[8]

The ALJ discredited this testimony for three reasons. First, McClanahan later modified his testimony and stated that his wife had called MSHA. Second, McClanahan's failure to remember who placed the call was at odds with the carefully written records he maintained of his conversations and incidents related to his ultimate termination. Third, if a complaint to MSHA was made, the ALJ thought it highly unlikely that MSHA would indicate it was powerless to act. Accordingly, the ALJ determined that McClanahan's safety complaints were not made in good faith and dismissed the discrimination suit.

B.

McClanahan then filed a petition for discretionary review with the full Commission, which determined that the ALJ's finding was not supported by substantial evidence. The Commission concluded that McClanahan's record of hauling loads in excess of 24 tons did not establish that he was unconcerned with his safety. Additionally, the

_____

**6** J.A. at 58.
**7** **Id.**
**8** **Id.** at 60.

5

Commission did not find demonstrative of a lack of good faith evidence that McClanahan only voiced his complaints after purchasing the truck. Finally, the Commission determined that substantial evidence established that McClanahan engaged in actions which constituted safety complaints. Having found that McClanahan's complaints demonstrated his good faith belief of a safety hazard, the Commission further found that McClanahan's belief was reasonable and that Wellmore failed to respond adequately to McClanahan's concern. Accordingly, the Commission ordered McClanahan's immediate reinstatement and remanded the action for a calculation of back pay, interest, and attorney's fees. Wellmore now appeals, claiming that the Commission erred in reversing the ALJ's determination.

III.

Although the Commission recognized that it "is bound by the terms of the Mine Act to apply the substantial evidence test when reviewing an administrative law judge's decision,"[9] it nevertheless ignored this limitation, and merely substituted a competing view of the facts. Accordingly, we hold that the Commission misapplied its statutory standard of review and reverse the Commission's decision.

Section 113(d) of the Mine Act explicitly states that the Commission's review authority is limited to one or more of five specified grounds:

> (I) A finding or conclusion of material fact is not supported by substantial evidence.
>
> (II) A necessary legal conclusion is erroneous.
>
> (III) The decision is contrary to law or to the duly promulgated rules or decisions of the Commission.
>
> (IV) A substantial question of law, policy or discretion is involved.

_____

9 **Id.** at 69.

(V) A prejudicial error o[f] procedure was committed.**10**

Thus, "the only `question' related to the factual findings of an ALJ that the Commission can consider is whether those findings are supported by substantial evidence."**11** The Supreme Court has defined substantial evidence as "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"**12**

We find <u>Donovan ex rel. Chacon v. Phelps Dodge Corp.</u>**13** particularly relevant to our inquiry. In that case, the United States Court of Appeals for the D.C. Circuit held that the Commission improperly reversed an ALJ's determination that an employer had illegally discriminated against an employee active in promoting mine safety. The court noted that:

> . . . the Commission did no more than substitute a competing view of the facts for the view the ALJ reasonably reached. There can be little doubt that the ALJ's findings were amply supported by substantial evidence, and even if the Commission's own view found support in the record as well, it was bound to uphold the ALJ's determinations.**14**

Similarly, in the instant case, our review of the record demonstrates that the ALJ's determination was supported by substantial evidence. We, like the ALJ, emphasize the fact that before purchasing the truck, McClanahan repeatedly hauled loads in excess of 24 tons without complaint. Specifically, McClanahan signed at least 133 time sheets from 1990 to 1992 indicating that his load exceeded 24 tons.

McClanahan contends that the ALJ failed to consider the record as a whole, and only evaluated the evidence favorable to Wellmore. For

_____

**10** 30 U.S.C. § 823(d)(2)(A)(ii) (1994).
**11** **Donovan ex rel. Chacon v. Phelps Dodge Corp.**, 709 F.2d 86, 91 (D.C. Cir. 1983).
**12** **Richardson v. Perales**, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).
**13** 709 F.2d 86 (D.C. Cir. 1983).
**14** **Chacon**, 709 F.2d at 92 (internal citations omitted).

7

example, although the ALJ noted that McClanahan's truck had a hauling capacity of 15 tons, McClanahan contends that the ALJ then ignored the overwhelming evidence that demonstrated the danger of exceeding this capacity. Such evidence included the 1990 Ford Truck Owner's Guide, which warned against exceeding the hauling capacity, and a MSHA Bulletin dated November 22, 1994 which warned about overloading trucks.

We disagree with McClanahan. The ALJ heard, evaluated, and weighed the evidence, made credibility determinations, and rendered a reasoned decision. "`[T]he ALJ has sole power to make credibility determinations and resolve inconsistencies in the evidence.'"**15** The fact that evidence exists in the record to support McClanahan's position is not determinative. Rather, the Commission's review was statutorily limited to whether the ALJ's findings of fact were supported by substantial evidence. The "`possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"**16**

IV.

Based on the foregoing reasons, we find that the ALJ's determination was supported by substantial evidence. Accordingly, we reverse the Commission's decision.

<u>REVERSED</u>

_____

**15 <u>Grizzle v. Pickands Mather & Co./Chisholm Mines</u>**, 994 F.2d 1093, 1096 (4th Cir. 1993) (quoting <u>Freeman United Coal Mining Co. v. Benefits Review Bd.</u>, 912 F.2d 164, 168 (7th Cir. 1990)).

**16 <u>Wamsley v. Mutual Min., Inc.</u>** , 80 F.3d 110, 113 (4th Cir. 1996) (quoting <u>Consolo v. Federal Maritime Comm'n</u> , 383 U.S. 607, 620 (1966)); <u>see also Parker v. DOWCP</u>, 590 F.2d 748, 749 (8th Cir. 1979) (stating that if the ALJ's decision is "adequately supported by the evidence and not inconsistent with the law[,] the[ALJ's] determination is conclusive, and it is immaterial that the facts permit the drawing of diverse inferences.").

8