**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

R. J. JESSEE,
<u>Petitioner,</u>

v.

WESTMORELAND COAL COMPANY,

INCORPORATED; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
<u>Respondents.</u>

No. 96-2121

On Petition for Review of an Order
of the Benefits Review Board.

(96-339-BLA)

Argued: October 28, 1997

Decided: April 6, 1998

Before RUSSELL* and WIDENER, Circuit Judges, and

TRAXLER, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Petition denied by unpublished per curiam opinion.
_____

*Judge Russell heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

**COUNSEL**

**ARGUED:** Martin Douglas Wegbreit, CLIENT CENTERED
LEGAL SERVICES OF SOUTHWEST VIRGINIA, INC., Castle-
wood, Virginia, for Petitioner. Douglas Allan Smoot, JACKSON &
KELLY, Charleston, West Virginia, for Respondent Westmoreland
Coal. Gary K. Stearman, Office of the Solicitor, UNITED STATES
DEPARTMENT OF LABOR, Washington, D.C., for Respondent
Director. **ON BRIEF:** J. Davitt McAteer, Acting Solicitor of Labor,
Donald S. Shire, Associate Solicitor, Patricia M. Nece, Counsel for
Appellate Litigation, Office of the Solicitor, UNITED STATES
DEPARTMENT OF LABOR, Washington, D.C., for Respondent
Director.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioner R.J. Jessee seeks review of the denial of his application
for black lung benefits by the Department of Labor's Benefits Review
Board. Because we find no error in the BRB's decision to deny bene-
fits, we deny the petition for review.

I.

Jessee, a retired coal miner, first applied for black lung benefits in
November of 1980. An Administrative Law Judge heard and denied
the application initially and at two reconsiderations, and the BRB
affirmed on August 21, 1987. This court dismissed Jessee's first
appeal as untimely, but after Jessee was again unsuccessful at the ad-
ministrative level, we heard the case and reversed the denial of bene-
fits in Jessee v. Director, Office of Worker's Compensation Programs.**1**

_____

**1** 5 F.3d 723 (4th Cir. 1993).

2

In that case, we reversed the BRB's denial of benefits on the ground that, contrary to the BRB's determination, either the Deputy Commissioner of Labor or an ALJ has the authority to modify an ALJ's clearly erroneous factual finding in a black lung case. The BRB had found that neither party had such authority, and had thus allowed to stand what we found to be "an undeniably erroneous factual finding in the ALJ's initial opinion denying benefits." [2] Therefore, we remanded the case to the BRB for further consideration.

Upon remand, an ALJ received additional evidence, but again denied benefits. The BRB affirmed, and this petition for review followed.

II.

Jessee contends that the ALJ made several errors on remand. First, Jessee argues that the ALJ and the Board erred in invalidating a pulmonary function test that may have been qualifying. Because the ALJ's determination was a finding of fact, our review is limited to whether there was substantial evidence to support the ALJ's determination. Substantial evidence is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." [3]

20 C.F.R. § 718.204(c) provides a black lung claimant with four means of proving total respiratory disability from pneumoconiosis: (1) a pulmonary function test showing qualifying values; (2) arterial blood gas tests showing qualifying values; (3) evidence of heart failure due to pneumoconiosis; or (4) a medical report concluding that disability from pneumoconiosis is total. [4] At issue here is the first of these means of proof-- pulmonary function tests. The ALJ was presented with tests that found both qualifying and non-qualifying values. Jessee contends that the ALJ erred in invalidating one of the qualifying tests, that of October 28, 1994, based on the opinions of physi-

_____

[2] **Jessee v. Westmoreland Coal Co. and Director**, 5 F.3d 723, 725 (4th Cir. 1993).

[3] **Richardson v. Perales**, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

[4] 20 C.F.R. § 718.204(c) (1997).

3

cians. Jessee argues that none of the grounds cited by the invalidating physicians comports with those listed in Appendix B of 20 C.F.R. § 718. We disagree.

20 C.F.R. § 718, Appendix B lists several grounds on which a pulmonary function test can be found unacceptable. **5** At least one of these grounds is cited in each report invalidating the October 1994 pulmonary function test. For instance, the report of Dr. Dahhan dated October 31, 1994 cites poor effort, premature termination of airflow, and excessive variation among Forced Vital Capacity curves.**6** Dr. Hippensteel's report, dated February 8, 1995, states that "his [Jessee's] results [from the October 28, 1995 test] varied by a lot more than 5% between efforts which does not meet criteria for validity under federal black lung regulations."**7** Of like effect were the reports of Drs. Renn and Fina.

At best, the evidence presented by the two parties in this case is conflicting and inconsistent, with Jessee presenting test results that claim to show total disability due to pneumoconiosis and the defendant Westmoreland Coal Company attempting to show that those results are inaccurate. Therefore, in employing the substantial evidence standard of review, we are bound to defer to the ALJ's reconciliation of such conflicts and inconsistencies. As we wrote in Grizzle v. Picklands Mather and Co., "[o]ur role in reviewing adjudications

_____

**5** These include: the patient has not reached full inspiration during the test; the patient has not used maximal effort during the test; the patient has not continued expiration for five seconds or until an "obvious plateau" has occurred; the patient has coughed or closed his glottis or has obstructed the mouthpiece used in the test; the patient has made excessive hesitations or false starts; or there is an "excessive variability" among the data curves produced by the test. 20 C.F.R. § 718, Appendix B (1997).

**6** As for the last of these reasons, Jessee argues that Dr. Dahhan was required to find that there was specifically more than a 5% variation among the largest FVC curves rather than finding, as he did, "more than a 5% variation among the FVC curves . . . ." We need not pass on that particular point for the Board found that the "study was invalid due to poor effort." It is that reason that we review.

**7** J.A. at 77.

4

of black lung claims is carefully and purposefully circumscribed. We are not to substitute our view of the evidence for that of the ALJ."[8]

The ALJ in this case was clearly presented with evidence that "a reasonable mind might accept as adequate to support[the] conclusion"[9] that Jessee was not totally disabled by pneumoconiosis. Thus, we defer to the Board's finding, and decline to reverse on this ground.

We should add at this point that a principal reliance in this petition for review is on the validity of the pulmonary function study following our remand in this case. That study was made October 28, 1994. The physician who administered that study himself, Dr. Dahhan, was of opinion that the results were unreliable, as well as were the opinions of other qualified physicians, all of whom depended upon legitimate reasons for their opinions. The ALJ and the Board accorded greater weight to these opinions than to others and were justified in rejecting the results of the October 28, 1994 pulmonary function study.

III.

Jessee also claims that the ALJ erred in not applying the treating physician rule to his own physician's testimony that a permanent disability existed. According to Jessee, the treating physician rule requires a court to place great, although not necessarily dispositive, weight on the opinion of the subject's treating physician. In Grizzle, this court stated unequivocally that the treating physician's evidence is not entitled, as a matter of law, to greater weight in considering whether permanent disability exists.[10]

Therefore, as we recognized in Grizzle, although an ALJ may give greater weight to a treating physician's opinion when considering the evidence presented in an application for benefits, there is no rule requiring him to do so. Thus, we hold that the ALJ and the Board did

_____

[8] **Grizzle v. Picklands Mather and Co.**, 994 F.2d 1093, 1099 (4th Cir. 1993).
[9] **Perales**, 402 U.S. at 401.

[10] **Grizzle**, 994 F.2d at 1097-98.

5

not err in refusing to give special weight to the opinion of Jessee's treating physician. The Board gave lesser weight to the opinion of the treating physician for the legitimate reason that an earlier opinion was unexplainably not consistent with the opinion depended upon, which we do not disturb. The Board and ALJ did, however, consider the question of the weight of the treating physician's opinion but concluded that it did not carry the day.

IV.

Finally, Jessee argues that the ALJ erred by not applying the presumption of total disability due to pneumoconiosis that is available to those who filed claims before January 1, 1982, and who worked in coal mines for fifteen years or more.[11] However, in order to apply this presumption, a court must find a "totally disabling respiratory or pulmonary impairment" under 20 C.F.R. § 718.204. As there was not such a prerequisite finding, the ALJ and the Board correctly did not apply this presumption.

Based on the foregoing, the petition for review is

<u>DENIED</u>.

_____

[11] 20 C.F.R. § 718.305(a) (1987).

6