**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WILLIAMS MOUNTAIN COAL COMPANY,
*Petitioner,*

v.

JIMMY LUCAS; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,

*Respondents.*

No. 03-2288

On Petition for Review of an Order
of the Benefits Review Board.
(02-856-BLA)

Argued: May 5, 2004

Decided: June 15, 2004

Before LUTTIG, MOTZ, and SHEDD, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** William Steele Mattingly, JACKSON KELLY, P.L.L.C.,
Morgantown, West Virginia, for Petitioner. Shellie L. Sewell, Student
Caseworker, Legal Clinic, School of Law, WASHINGTON & LEE
UNIVERSITY, Lexington, Virginia, for Respondents. **ON BRIEF:**
Dorothea J. Clark, JACKSON KELLY, P.L.L.C., Morgantown, West
Virginia, for Petitioner. Mary Z. Natkin, James M. Phemister, Legal

Clinic, School of Law, WASHINGTON & LEE UNIVERSITY, Lexington, Virginia, for Respondents.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Williams Mountain Coal Company ("Williams") petitions for review of the Benefits Review Board's ("BRB") decision affirming the Administrative Law Judge's ("ALJ") award of benefits to Jimmy D. Lucas under the Black Lung Benefits Act ("the Act"), 30 U.S.C. §§ 901-45 (2000). Because the ALJ properly analyzed the relevant evidence, adequately explained his resolution of conflicting evidence, and reached a decision supported by substantial evidence in the record, we deny the petition for review and affirm the award of benefits.

I.

Jimmy D. Lucas worked in the coal mines for twenty-eight years before retiring in 1997 due to an ankle injury. On November 25, 1997, he filed an application for black lung benefits with the Office of Workers' Compensation ("OWCP"). After denying his claim, the OWCP referred Lucas's case to ALJ Robert J. Lesnick for a hearing and adjudication. On November 3, 2000, the ALJ issued an opinion awarding Lucas benefits. Williams appealed, and the BRB vacated the ALJ's finding pertaining to the existence of pneumoconiosis based on the medical opinion evidence and his finding with regard to disability causation. The BRB remanded Lucas's case to the ALJ with specific instructions to explain further his resolution of the conflicting record evidence. On remand, the ALJ further articulated his reasoning, and again awarded benefits. This time the BRB upheld the award on appeal. Williams timely petitioned for review.

## II.

Our standard for reviewing an award of black lung benefits is well-established:

> We review claims for benefits under the Act to determine whether substantial evidence supports the ALJ's findings of fact. Substantial evidence is more than a mere scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In determining whether substantial evidence supports the ALJ's factual determinations, we must first address whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence. We review the ALJ's and the Board's conclusions of law de novo to determine whether they are rational and consistent with applicable law.

*Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998) (internal quotation marks and citations omitted).

## III.

On appeal, Williams challenges three aspects of the ALJ's opinion: (1) the asserted failure to resolve conflicting accounts of Lucas's smoking history; (2) the finding that Lucas suffered from pneumoconiosis; and (3) the conclusion that pneumoconiosis was a substantial contributing cause of Lucas's totally disabling respiratory condition.[1] With respect to all three of these issues, however, Williams puts forth the same basic arguments; namely, that the ALJ failed to consider all

---

[1]To obtain benefits under the Act, a claimant must establish by a preponderance of the evidence that: "(1) he has pneumoconiosis; (2) the pneumoconiosis arose out of his coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a [substantially] contributing cause of his total respiratory disability." *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 207 (4th Cir. 2000); *see also* 20 C.F.R. §§ 718.202-204 (2003). Williams does not dispute that Lucas has established the second and third elements.

relevant evidence and adequately explain how he resolved the conflicting evidence in the record.

The Administrative Procedures Act ("APA") requires an ALJ to include in his opinion "findings and conclusions, and the reasons and basis therefore, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A) (2000); *see also Lane Hollow Coal Co. v. OWCP*, 137 F.3d 799, 802-03 (4th Cir. 1998). The APA does not, however, require the ALJ to regurgitate the record nor does it demand perfection. Rather, the primary purpose of the APA's "duty of explanation" is to help the ALJ reach the correct result, and "its secondary purpose is to allow us to discharge our own duty to review the decision." *Lane Hollow*, 137 F.3d at 803. So, "[i]f we understand what the ALJ did and why he did it, we, and the APA, are satisfied." *Id.* With these principles in mind, we turn to Williams' assertions of error.

First, Williams argues that the ALJ failed to resolve the conflicting accounts of Lucas's smoking history and make a "specific finding" as to the extent of this history. To the contrary, however, the ALJ's finding as to the extent of Lucas's smoking history is evident from the opinion — the ALJ clearly relied on the eighteen-pack year smoking history recorded by Dr. Rasmussen based on Lucas's self-report. In doing so, the ALJ also acknowledged and considered other conflicting accounts provided in the record. In his first opinion, the ALJ implicitly rejected the lower estimates of Lucas's smoking history, as reported by Lucas at the evidentiary hearing and to Dr. Zalvidar. And on remand, the ALJ discredited the higher estimates of Lucas's smoking history put forth by Drs. Castle, Zalvidar, Jarboe, and Morgan because these experts rejected Lucas's self-reports and instead relied primarily on the results of a carboxyhemoglobin test — a test that even Dr. Zalvidar acknowledged was "not very accurate" in predicting a patient's smoking *history*. Although the ALJ did not expressly discuss each and every alternative account of Lucas's smoking history, we are satisfied that the opinion contains adequate information to accommodate a thorough review, *see See v. Washington Metro. Area Transit Auth.*, 36 F.3d 375, 384 (4th Cir. 1994), and that the ALJ's reliance on an eighteen-pack year history is supported by substantial evidence in the record.

Williams next contends that the ALJ failed to adequately resolve the conflicting record evidence as to whether Lucas suffered from pneumoconiosis.[2] On remand, the ALJ first examined the x-ray and CT scan evidence. Of the thirty x-ray readings, six were positive and twenty-four were negative for pneumoconiosis. The ALJ discounted several of the negative x-ray readings because the qualifications of the readers were unknown and because of concerns about the poor film quality of one of the x-rays. Based on the conflicting evidence still remaining, the ALJ concluded that the radiological evidence was "suggestive," but not conclusive of pneumoconiosis.[3]

The ALJ then continued on to consider the conflicting medical opinions. In the ALJ's first opinion, he thoroughly summarized the opinions of each of the nine doctors.[4] Those opinions split into two camps — some doctors opined that Lucas had pneumoconiosis and was totally disabled as a result of exposure to coal mine dust and cigarette smoking, and others concluded that Lucas did not have pneumoconiosis and his total disabling condition was solely the result of his smoking history.[5] On remand, the ALJ briefly reviewed these

---

[2]Pursuant to 20 C.F.R. § 718.202(a), a claimant can prove the existence of pneumoconiosis through four different categories of evidence; the only two relevant here are x-ray evidence, § 718.202(a)(1), and reasoned medical opinion evidence, § 718.202(a)(4).

[3]Williams argues that the ALJ must make a conclusive finding as to whether the x-ray evidence *alone* establishes pneumoconiosis, and that characterizing the x-rays as "suggestive" is insufficient. But, contrary to Williams' assertions, the ALJ is actually required to "weigh the x-ray evidence with the physicians' opinions" *before* concluding whether a claimant has established the presence of pneumoconiosis. *See Compton*, 211 F.3d at 211 (requiring the ALJ to weigh all of the relevant evidence under § 718.202(a) together).

[4]In his remand opinion, the ALJ expressly incorporated "all of the evidence which was previously discussed" in his first opinion, "[e]xcept as otherwise vacated by the Board." In its first order the BRB only vacated two of the ALJ's *findings*: (1) the "Section 718.202(a)(4) (2000) finding," and (2) the "finding regarding the cause of claimant's total respiratory disability."

[5]Of the nine expert opinions, only Dr. Gobunsuy did not reach any conclusion as to whether Lucas was totally disabled, and thus did not discuss the cause of his total disability.

opinions again, and ultimately chose to credit the former group of experts, and in particular Dr. Rasmussen. The ALJ clearly articulated the reasons why he discredited the opinions of those experts who did not diagnose pneumoconiosis — primarily because they improperly relied on the inaccurate carboxyhemoglobin test to inflate Lucas's smoking history and refused to consider the possible additive effect of smoking and coal dust in making their ultimate conclusions. The ALJ also stated his reasons for crediting Dr. Rasmussen, finding that in addition to being Lucas's treating physician, his opinion was also the "best reasoned and documented because it was most consistent with [Lucas's] complaints of shortness of breath, his history of smoking, coal mine employment, along with qualifying results on the pulmonary function studies that showed irreversibility."

The ALJ examined all of the evidence together, in accord with our directive in *Island Creek Coal Co. v. Compton*, 211 F.3d 203 (4th Cir. 2000), before ultimately concluding that Lucas had established the existence of pneumoconiosis by a preponderance of the evidence. The ALJ has exclusive power to make credibility determinations and resolve inconsistencies in the evidence; thus, we will not disturb his conclusion because it is clearly supported by substantial evidence in the record and is not contrary to law. *See Grizzle v. Pickands Mather & Co./Chisolm Mines*, 994 F.2d 1093, 1096 (4th Cir. 1993).

Finally, Lucas asserts that the ALJ did not consider all relevant evidence and failed to resolve conflicting evidence when ascertaining the cause of Lucas's totally disabling respiratory impairment. Once again, the expert opinions were divided into two groups — those opining that Lucas's disability was caused by both cigarette smoking and coal mine dust, and that coal mine dust was a significant contributing cause, and those concluding that cigarette smoking was the *only* cause. The ALJ again found the former opinion, particularly as articulated by Dr. Rasmussen, to be the most persuasive, and thus concluded that pneumoconiosis was a substantially contributing cause of Lucas's totally disabling condition.[6]

---

[6]To be totally disabled due to pneumoconiosis under the revised regulations, pneumoconiosis must be a "substantially contributing cause" of the miner's totally disabling impairment, 20 C.F.R. § 718.204(c)(1)

Although the ALJ's discussion of disability causation was admittedly brief, we have repeatedly recognized that the ALJ's "duty of explanation is not intended to be a mandate for administrative verbosity or pedantry. If a reviewing court can discern what the ALJ did and why he did it, the duty of explanation is satisfied." *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (internal quotation marks and citation omitted). Here, we have no difficulty discerning the ALJ's reasoning; indeed, the ALJ expressly incorporated "the reasons outlined" in the remainder of his opinion. Looking to the opinion as a whole, we are satisfied that the ALJ discussed all relevant evidence. Moreover, as noted above, the ALJ also adequately explained why he discredited the opinions of Williams' experts — because, *inter alia*, they refused to consider the possibility that coal dust, in addition to cigarette smoking, caused Lucas's impairment. This is more than sufficient to satisfy the ALJ's duty of explanation, and the ALJ's conclusion that pneumoconiosis was a substantially contributing cause of Lucas's disabling condition is supported by substantial evidence.

IV.

For the foregoing reasons, the petition for review is denied and the decision awarding benefits is affirmed.

*AFFIRMED*

---

(2001); whereas prior to this amendment, we only required that pneumoconiosis be a "contributing cause" of the disabling condition, *see Robinson v. Pickands Mather & Co./Leslie Coal Co.*, 914 F.2d 35, 38 (4th Cir. 1990). The ALJ found that total disability had been established under both standards.